## No. 18,145.

TOWN OF SHERIDAN *v.* VALLEY SANITATION DISTRICT.

(324 P. [2d] 1038)

Decided April 28, 1958.    Rehearing denied May 19, 1958.

Messrs. FULLER & EVANS, Mr. DWIGHT A. HAMILTON, for plaintiff in error.

Mr. CLARENCE L. BARTHOLIC, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE Town of Sheridan, plaintiff in error, was defendant in the trial court and will be referred to as Sheridan. Defendant in error Valley Sanitation District was plaintiff below, and will be designated as "The District." The complaint sought to condemn rights of way and easements through and across two of the public streets in the Town of Sheridan for the construction and maintenance of a sewer line. Sheridan by writ of error seeks to reverse the judgment of the lower court upholding the right of the District to condemn the right of way and easements through Sheridan. The issuance of a permanent injunction restraining the officials of Sheridan from interfering with the construction and maintenance of said sewer line also is challenged by Sheridan.

The trial court commented, and we agree, that the pleadings are in a state of confusion by reason of the various amendments to the complaint and the variety of relief sought by the District. When the case was

finally at issue and trial had, however, the questions presented were:

1. Did the District have the right and authority under law to construct its sewer lines within the town limits of Sheridan?

2. Was approval of the Town of Sheridan necessary for the construction and maintenance and operation of the sewer?

3. Was the withholding of consent by the town arbitrary, capricious and unreasonable?

4. Did Sheridan have the absolute right under the statute to withhold its consent and to veto the construction for any reason or for no reason at all?

There is no dispute that the following factual situation was presented:

The Valley Sanitation District was organized pursuant to the statutes of the State of Colorado and by decree of the district court of Arapahoe County. The boundaries of the District were generally 80 acres west of the Centennial Race Track and some 200 acres north of Belleview Avenue, all in Arapahoe County, Colorado. The sewer line extends from near Belleview and South Irving Street to the Englewood Sewage Plant, located near South Lipan Street and West Bates Avenue. The portion of the Town of Sheridan traversed by the line is very slight. Pursuant to the statute (C.R.S. '53, 139-52-2 (2) ) the District sought permission of the Town of Sheridan to traverse that portion of the municipality in the line of route of its proposed sewer line. With the exception of two street cuts in the public streets of Sheridan, the line was entirely on private property acquired through negotiation by the District. At the time the District sought permission of Sheridan to construct its line there were no ordinances or other laws extant providing for any norms, standards or procedure for obtaining permission of the Town of Sheridan for such proposed construction. Extended negotiations were undertaken. Attorneys and officers of the District

appeared at council meetings and had numerous conferences with authorities of Sheridan. A Sheridan ordinance requiring a fee of $3.00 for a permit to cut a gravel street for a water line was in existence but overlooked by Sheridan officials and unknown to the District because no codification of Sheridan ordinances has been undertaken. The District tendered the sum of $20.00 for two permits, one for cutting West Hampden Avenue and one for cutting West Oxford Avenue.

Sheridan did not issue the permits requested and withheld its consent to the construction. In exchange for its consent, Sheridan attempted to extract from the District concessions of the admitted value of $160,000.00 for the people of Sheridan, demanding 800 taps valued at $200.00 each and providing that Sheridan and not the District would determine the tap fee. In addition demand was made that the District agree to supply the Sheridan residents with sufficient taps, if available, to service the entire town area. The negotiations producing no agreement, the District instituted this condemnation suit on December 13, 1955. About the same time the town council of Sheridan passed an ordinance on the subject which provided for the absolute right of inhabitants of the Town of Sheridan within 400 feet of any private sewer line to tap said line and further that the Town of Sheridan should set the tap fees. Another section provided that any property owner in the town, no matter where situate, would also have the right to connect with the sewer line if connections were available at the time. The ordinance further provided that after the expiration of five years all right, title and interest in and to any private sewer line situate in the Town of Sheridan should vest in the town. The District, in the meantime, had commenced construction of the sewer in the Town of Sheridan on the private property owned by it, whereupon the town marshal, on instruction from the mayor and other city officials, issued an order to the District

to cease and desist all its operations in the town. Hence the application for the restraining order.

For a proper determination of the questions presented it is necessary to reconcile several of the statutes enacted by the legislature in the 1949 session. In toto they provide for the organization of sanitary sewer districts, the acquiring of rights-of-way by eminent domain, the financing and funding of the district, and the discharging of the consequent financial obligations. The following are the pertinent statutes:

C.R.S. '53, 89-5-2. "Definition of terms.—* * *

"A sanitation district is one to provide for storm or sanitary sewers, flood and surface drainage, disposal works and facilities and all necessary or proper equipment and appurtenances incident thereto, and for those purposes any such district shall have power to extend its sewer lines to an appropriate outlet outside the district.

"* * * A district may be entirely within or entirely without, or partly within and partly without one or more municipalities or counties, and the district may consist of noncontiguous tracts or parcels of property."

C.R.S. '53, 89-5-13. "Powers of board.—* * *

"(10) To have and exercise the power of eminent domain and dominant eminent domain and in the manner provided by law for the condemnation of private property for public use to take any property necessary to the exercise of the powers granted, both within and without the district.

"(11) To construct and maintain works and establish and maintain facilities across or along any public street or highway, and in, upon, or over any vacant public lands, which public lands are now, or may become, the property of the state of Colorado, and to construct works and establish and maintain facilities across any stream of water or watercourse. The district shall promptly restore any such street or highway to its former state of usefulness as nearly as may be, and shall not use the

same in such manner as to completely or unnecessarily impair the usefulness thereof.

\* \* \*

"(14) To have and exercise all rights and powers necessary or incidental to or implied from the specific powers granted in this article. Such specific powers shall not be considered as a limitation upon any power necessary or appropriate to carry out the purposes and intent of this article."

In addition to the foregoing the legislature enacted chapter 244, 1949 Session Laws (C.R.S. '53, 139-52) to provide for the issuance of revenue bonds to finance said sewer district and sewerage facilities. It is entitled: "An act authorizing municipalities to acquire, construct, reconstruct, lease, improve, better, and extend sewerage facilities; to issue bonds payable solely from the revenues thereof; to accept loans, grants, and contributions to aid in financing the planning and construction thereof; to regulate the issuance of such bonds and provide for their payment and for the rights of the holders thereof; to enter into contracts with other municipalities or districts or with industrial establishments regarding such sewerage facilities; and other matters necessary in the premises." It is to be noted the title is completely indicative of an exclusive financing measure.

In addition to definitions, the enumeration of powers, the authorization of the bonds, and the pledging of revenue therefrom, the act contains the following language in 139-52-2 (2):

"\* \* \* but no sewerage facilities shall be operated in whole or in part in any other municipality unless the *approval of such* other municipality in the territory in which the facilities will be located *is obtained;*" (Emphasis supplied.)

There is little doubt that under the constitutional provisions establishing the right of eminent domain and the several statutes enacted pursuant thereto, the district has power and authority to condemn land. The

right to go upon the streets and highways in the state and to open them for the construction and maintenance of sewer lines is not limited and includes streets in incorporated towns as well as highways.

Therefore, our decision turns upon the extent of the power of the municipality under C.R.S. '53, 139-52-2 (2) to withhold its approval for the construction of a sewer line within the municipal boundaries.

This is the second time that we have had occasion to construe the language of this section of the statute. In *Town of Glendale v. Denver*, 137 Colo. 188, 322 P. (2d) 1053, decided March 17, 1958, we held that this section, if construed to authorize a veto of a constitutional grant of power to the City and County of Denver, would be of doubtful validity. We then gave force and effect to the language by limiting the veto power of a municipality to a *reasonable exercise* thereof consistent with the police power in the protection of the health, safety and welfare of the inhabitants of the municipality. To the extent an ordinance lawfully passed by a municipality is limited to a proper exercise of the police powers, we can uphold it. It is our duty, if possible, to give full force and effect to legislative enactments. If a reasonable interpretation that will avoid constitutional conflict is at hand, we should adopt it. *People v. Kilpatrick*, 79 Colo. 303, 245 Pac. 719. A reasonable construction of the section of the statute in question is that the municipality may require reasonable, safe and healthful construction methods and can withhold its consent unless given assurance that injury to users of its streets will not result, or that its own sewer and water lines and water wells in the municipality will not be destroyed or contaminated. We think it clear that the legislature did not intend to authorize sewer districts and provide for their management, operation, control and financing on the one hand, and on the other give a municipality bordering on the district through which the facilities must of necessity be extended, either ex-

tensively or slightly, the absolute right of veto over the project. If such a right were vested in any municipality it could prevent the development of any area on the four sides of its boundaries. The very essence of the power of eminent domain is the taking of necessary rights-of-way and property *without the consent of the owner* providing only that just compensation be paid therefor. The right of eminent domain and the absolute right of veto on the part of a municipality to the exercise of that right presents an irreconcilable conflict. Such a construction would defeat the entire enactment. We are of the opinion that the legislature merely intended to recognize the inherent power of a municipality to exercise its police power reasonably to protect its inhabitants.

The court found, and the record amply establishes, that Sheridan was not concerned with either the health, welfare or safety of the inhabitants of Sheridan. The length of the sewer line within the Town of Sheridan was approximately 100 feet. Its consent was withheld in an effort to "horse trade" with the District. This is borne out by the testimony of the mayor explaining his version of the concessions demanded of the District as a condition of the consent of Sheridan:

"The Court: What do you mean when you say the town made a counter-proposal? .

"Witness: Well, when you horse trade you ask for a little more than you might expect to get. There is negotiation points there, and that is what the meeting was set up for, to do a little negotiating.

"The Court: To horse trade?

"Witness: That's right, to get down to brass tacks."

A municipality cannot use its police power for bargaining purposes. Sheridan attempted to do just that, namely, acquire a sewer system for its own inhabitants by full use of the facilities being created by the District. "To permit the city to base its action upon considerations of financial benefit to itself would be allowing it to put its powers up for sale to the highest bidder. * * * We

say without hesitation that the city has no right to barter with the police powers, or exact for itself financial benefits as a condition for its exercise. Such power must be exercised for the public good and public welfare, and not for public gain." *State ex rel. Wisconsin Tel. Co. v. Sheboygan,* 111 Wis. 23, 86 N.W. 657. See also: *Wisconsin Tel Co. v. City of Milwaukee,* 223 Wis. 251, 270 N.W. 336.

■ Although challenged in the brief of defendant in error as merely arbitrary and capricious, the constitutional validity of the ordinance enacted by Sheridan in support of its exorbitant demands is hereby considered on our own motion. The enactment in question is known as Ordinance 17, Series 1955, and, among other things, provides as follows:

(Sec. 4) "No application for a permit to construct a private sewer in any public way, street or place shall be granted, except upon the express condition that the property owners in the Town of Sheridan are allowed to connect with such private sewer upon the payment to the person constructing such private sewer, or such person's successors in interest or assigns a reasonable charge for making such connection during the period provided in Section 5 below, and the Board of Trustees of the Town of Sheridan shall determine what is a reasonable charge, which charge may include a reasonable payment to the person operating the sewage disposal plant receiving such sewage."

(Sec. 5) "No application for a permit to construct a private sewer in any public way, street or place shall be granted except upon the express condition that all right, title and interest in and to the same will vest in the Town of Sheridan, Colorado, five (5) years after the date of completion of construction; provided, however, that the owner of such sewer may apply in writing to the Board of Trustees of the Town of Sheridan for an extension of this five-year period and the Board of Trustees may delay the vesting of title in the Town of Sheri-

dan to the sewer to a time not exceeding ten (10) years from the date of construction of such sewer."

These sections of the ordinance authorize the confiscation of private property by Sheridan without due process of law contrary to Article II, sections (15) and (25) of the Constitution. The right of eminent domain recognizes the due process provision of the Constitution, provides for the legal and orderly acquisition of private property for public use, and for just compensation for the taking. Where there is a proper exercise of the right of eminent domain and after payment of just compensation legally determined, the legal entity condemning the property obtains the absolute right, title and interest thereto. Under this Sheridan ordinance, the right, title and interest vests not in the party acquiring the right, but in Sheridan after the expiration of five years. Can one acquire property under the Constitution and statutes of the state by exercise of the right of eminent domain, and automatically lose it by operation of the ordinance of Sheridan? We think not. The statement of the proposition reveals its absurdity. The ordinance in question is unconstitutional and void.

The judgment of the trial court is affirmed in all particulars.