No. 19,260.

FLANK OIL CO., D/B/A ORIENTAL REFINING CO. *v.*
TENNESSEE GAS TRANSMISSION COMPANY, D/B/A
BAY PETROLEUM COMPANY, ET AL.
(349 P. [2d] 1005)

Decided February 16, 1960. Rehearing denied March 21, 1960.

Mr. MAX ZALL, Messrs. CREAMER & CREAMER, for plaintiff in error.

Messrs. HODGES, SILVERSTEIN, HODGES & HARRINGTON, for defendant in error Standard Oil Company of Indiana.

Mr. NED LOONEY, Mr. WILLIAM C. HARVIN, Messrs. BAKER, BOTTS, ANDREWS & SHEPHERD, for defendant in error Tennessee Gas Transmission Company and Bay Petroleum Corporation.

Mr. ROBERT M. WILLIAMS, Mr. S. E. FLOREN, Messrs.

Gorsuch, Kirgis, Campbell, Walker & Grover, for defendant in error Phillips Petroleum Company.

Messrs. Akolt, Turnquist, Shepherd & Dick, Mr. Edward G. Taylor, for defendant in error Sinclair Refining Company and The California Company. Mr. V. P. Cline, for The California Company.

Messrs. Hudiburgh & Ter Borg, for defendant in error The Frontier Refining Company.

Mr. William S. Livingston, Messrs. Holland & Hart, Mr. Peter H. Dominick, Mr. William C. McClearn, Mr. Howard S. Reilly, for defendant in error The Carter Oil Company.

Messrs. Grant, Shafroth, Toll, Chilson & McHendrie, Mr. John F. Shafroth, for defendant in error The Shamrock Oil and Gas Corporation.

Mr. Booth Kellough, Mr. Frank H. Shafroth, for defendant in error Gulf Oil Corporation.

Messrs. Tippit, Haskell & Welborn, for defendants in error Socony Mobil Oil Co. and Skelly Oil Company.

Mr. A. T. Smith, Mr. William M. Griffith, Mr. Gordon H. Mayberry, for defendant in error Continental Oil Company.

Messrs. Holme, Roberts, More & Owen, Mr. Donald C. McKinlay, Mr. Robert D. Poulson, for defendant in error Texaco, Inc.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

THE parties will be referred to as they appeared in the trial court. Plaintiffs instituted this action pursuant to the Colorado Unfair Practices Act, C.R.S. '53, 55-2-1, et seq., seeking temporary and permanent injunctive relief against alleged violations of the Act. Following filing of the complaint which named all of the defendant oil companies as defendants, the matter was set for hearing on the several defendants' motions to dismiss the complaint. After a lengthy hearing the trial court determined Section 3 of the Act to be so vague and indefinite that it failed to provide notice of prohibited conduct and thus violated the due process clause of the Fourteenth Amendment of the Constitution of the United States. Plaintiffs thereupon elected to stand upon the complaint as filed and requested that a final judgment of dismissal be entered. They then obtained a writ of error and the matter is now before us on the propriety of the ruling that Section 3 is on its face so vague and indefinite as to be invalid.

The purpose of the Unfair Practices Act is stated in Section 16 of the Act to be:

" * * * to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented. This article shall be liberally construed that its beneficial purposes may be subserved."

As a means of effectuating these ends Section 3 of the Act (55-2-3) declares that it shall be unlawful to sell or offer for sale any article or product for less than the cost thereof for the purpose of injuring competitors and destroying competition. The term cost is defined as including cost of raw materials, labor and all overhead expenses of the producer; as applied to distribution, cost is defined as the invoice or replacement cost, whichever is lower, plus the "cost of doing business" by the distributor and vendor. The "cost of doing business" or "overhead expense" is defined as all cost of doing busi-

ness incurred in the conduct of such business. The Act declares that this item must include without limitation: labor, including salaries of executives and officers; rent, interest on borrowed capital, depreciation, selling cost, maintenance of equipment, delivery costs, credit losses, all types of licenses, taxes, insurance and advertising.

The sanction plaintiff seeks to invoke is that set forth in Section 9 of the Act which declares any person, firm, etc., may maintain an action to enjoin the continuance of any act in violation of the statute. It declares that if the court shall find that defendants are violating or have violated any of the provisions of Sections 1 to 7 of the Act it shall enjoin a continuance of such violations. This section also provides for recovery of treble damages. However, we take note of the fact that the complaint makes no such demand, and we are not called upon to evaluate the statute in the light of any penal or criminal sanction.

The complaint alleges that all of the defendants were violating Section 3 of the Act; that they were all engaged in the distribution of gasoline at wholesale in Colorado and that they controlled the retail price at retail outlets. Further allegations concern the costs of the various defendants in terms of cost per gallon of gasoline at the refinery, cost of transportation per gallon from the refinery to Denver, Colorado, combined taxes per gallon of gasoline and estimated overhead expenses per gallon of gasoline, including labor, rent, interest on borrowed capital, depreciation, maintenance of equipment, licenses, taxes, insurance, utilities and advertising. The complaint further alleges that the retail price at which the defendants were selling gasoline was below their costs and that such sales were for the purpose of injuring competitors and destroying competition.

The complaint also contains separate claims against the defendant Tennessee Gas Transmission Company and Carter Oil Company, alleging individual violations and a

conspiracy to violate Section 1 (discriminatory price) and Section 7 (secret rebates) of the Act.

In addition to motions seeking dismissal, various other motions were filed by several of the defendants, including dismissal of the request for a temporary restraining order and preliminary injunction on the ground that the Act makes no provision for such relief, and on the further basis that the complaint fails to state a claim entitling the plaintiff to temporary emergency relief. There were also motions for more definite statement and for dismissal on the ground of failure to state a claim. There were no rulings on these additional motions. The trial court dismissed the action as to all defendants, and in its decision said:

"Let the record further show this Court after listening to the arguments as presented by counsel, and thoroughly going through the file, including the Complaint and the Motions, and some of the authorities as presented by the parties, does hereby decide that Section 55-2-3 of the 1953 Colorado Revised Statutes, known as the 'cost of doing business section' is so vague and indefinite that it makes it impossible to intelligently express a lawful course of conduct to pursue, and the Section therefore violates the 14th Amendment, the Due Process Clause of the Constitution of the United States, and is void.

"In the light of the above finding, the Motions herein mentioned to Dismiss as filed by the parties is granted."

In seeking reversal the plaintiff raises the following points:

1. That it was improper to determine the constitutionality of the Act on motion to dismiss; that the lack of valid standard is not apparent on the face of the statute and consequently the question of adequacy of the standard is ascertainable only in the light of the evidence on the trial.

2. That the court erred in failing to presume validity and in failing to require the defendants to demonstrate

beyond a reasonable doubt the unconstitutionality of the statute.

3. That the Act is a valid exercise of the police power and should be upheld unless its unconstitutionality is clearly demonstrated.

4. That the statute is not shown to be vague and indefinite merely because its terms are difficult to apply.

Defendants' argument (highly summarized) is that the cost standard is so palpably ambiguous and indefinite as to be on its face irreconcilable with the due process requirements of the constitution; that no amount of evidence at any hearing will furnish further enlightenment nor serve to demonstrate the obvious impracticability of the provision.

## I.

Plaintiff's major complaint revolves around the summary disposition of the action on motion to dismiss. It points out that the statute has been on the books for many years and that it constitutes a declaration of the public policy of Colorado which has had recognition during the period since its enactment. It also argues that invalidity is not obvious and has not been demonstrated, and that for all of these reasons the trial judge erred in granting the motions to dismiss upon the basis of the terms of the statute without reference to the evidence in the case.

It is, of course, desirable that a full hearing be held in connection with constitutional objections. This view was expressed in the case of *People ex rel. Attorney General v. Barksdale,* 104 Colo. 1, 87 P. (2d) 755 wherein the Court declared:

" * * * Especially in disposing of constitutional objections it is important to give a full hearing, first in regard to the proper allegations in pleadings, and then — as a rule — on the facts, which after all must usually determine whether a particular situation dealt with by the legislative branch does or does not justify a particular enactment, and whether or not in some respects, not

appearing from the allegations themselves, the General Assembly has overstepped the constitutional bounds.

"The issue of invalidity on constitutional grounds should be presented by an affirmative pleading. *Colorado & Southern Co. v. Davis*, 21 Colo. App. 1, 120, Pac. 1048."

It is axiomatic that constitutional questions must be presented in sharp focus by parties whose interests are actually affected by the questioned statutory provision. Moreover, enlightened evaluation is often impossible from an examination of a statute apart from the evidence of an alleged violation. Nevertheless, where it is contended that the statute is so vague that it does not furnish a standard sufficiently definite to give notice of meaning to persons affected thereby and is thus in contravention of due process, state or federal, the question may be considered on motion to dismiss. Since this was defendants' contention, the trial court was correct in considering the question on motion to dismiss the complaint. See *Collings, Unconstitutional Uncertainty — An Appraisal*, 40 Cornell L.Q. 195 and Note, 62 Harv. L. Rev. 77. In *U.S. v. Petrillo*, 332 U.S. 1, the rule was declared as follows:

"Many questions of a statute's constitutionality as applied can best await the refinement of the issues by pleading, construction of the challenged statute, and pleadings, and, sometimes, proof . . . But no refinement or clarification of issues which we can reasonably anticipate would bring into better focus the question of whether the contested section is written so vaguely and indefinitely that one whose conduct it affected could only guess what it meant."

See also *Winters v. N.Y.*, 333 U.S. 507. Here the Court approved the standard announced in *Connally v. General Const. Co.*, 269 U.S. 385, 391:

" * * * The legislative bodies in draftsmanship obviously have the same difficulty as do the judicial in interpretation. Nevertheless despite the difficulties,

courts must do their best to determine whether or not the vagueness is of such a character 'that men of common intelligence must necessarily guess at its meaning.' "

It is fundamental that legislation is entitled to a presumption of constitutionality and that the burden is on the person alleging invalidity to prove it beyond a reasonable doubt. See *People ex rel. Rogers v. Letford,* 102 Colo. 284, 79 P. (2d) 274. It was there pointed out that where unconstitutionality is alleged a proper judicial approach requires inquiry as to whether or not the legislation can be upheld. See also *Denver v. Knowles,* 17 Colo. 204, 30 Pac. 1041 and see *Milheim v. Moffat Tunnel Improvement District,* 72 Colo. 268, 211 Pac. 649; *Police Protective Association of Colorado v. Warren,* 101 Colo. 586, 76 P. (2d) 94; *Thiele v. City and County of Denver,* 135 Colo. 442, 312 P. (2d) 786.

In *Town of Sheridan v. Valley Sanitation District,* 137 Colo. 315, 324 P. (2d) 1038, it was said:

" * * * It is our duty, if possible, to give full force and effect to legislative enactments. If a reasonable interpretation that will avoid constitutional conflict is at hand, we should adopt it. *People v. Kilpatrick,* 79 Colo. 303, 245 Pac. 719."

There are at least two aspects of this problem of unconstitutional vagueness. One involves the necessity for providing conduct guides to the public, including the lawyer counseling his client. The other is the necessity for furnishing a sufficiently definite guide to enable the lawyer to contest the applicability of rules to his client so as to permit adjudication of rights through "rulings of law and charges to the jury which are so closely referable to the statute as to assure consistency of application," 62 Harv. L. Rev. 77.

It is in connection with the requirement of notice to the public that the test of the Petrillo case, supra, comes into play. It would seem, however, that where the problem is that of proscribing *future* conduct the *notice* to the citizen or the public aspect deserves less

emphasis. Thus when a plaintiff seeks an injunction he is not demanding that the defendant be punished but rather that he be restrained from acting unlawfully in the future. Consequently, the adjudication itself provides notice to the defendant and is prospective in its application. The result is that the defendant is not prejudiced by the failure of the statute to provide precise and adequate warning beforehand. Where, however, the requested sanction is penal or criminal, as in *Winters* and *Petrillo,* there is a reasonable basis for requiring it to give actual prior notice so that men of common intelligence are not required to guess at its meaning and differ as to its application. It would be manifestly unfair to *punish* a man for violation of an ambiguous statute susceptible to several interpretations, one of which is lawful.

Where the questioned provision is to serve as a guide to future conduct (for example, where an injunction is sought), the statute is viewed from the standpoint not of the prudent man but rather from the standpoint of the judge hearing the case. Therefore, the proper test of the case at bar is whether the standards contained in the questioned statutory provision are so vague as to make it impossible to adjudicate rights arising out of their provisions. Cf. 62 Harv. L. Rev. 76, 78, 81. See also p. 82 wherein the author states:

"To Guide Future Conduct. — In gauging the sufficiency of a statute to serve as a guide to future conduct, the Court must look to the same factors as when examining the statute's sufficiency to serve as a guide to adjudication — *usage, common experience, significance within a group, judicial interpretations.* The examination of these factors, however, is from a different point of view. The adjudicative test must be applied with the perspective of a judge and advocate at a trial, whereas in applying the notice test the Court must look through the eyes, first, of the individual, and, second, of his lawyer. For example, any narrowing judicial interpre-

tation of a statute can give it definiteness for adjudicative purposes. For notice purposes, however, judicial interpretations can add definiteness only if rendered before the act in question was committed. Words uttered after the time of the act come too late to warn the individual to seek legal advice and, if he has already sought such advice, too late to be of aid to the lawyer in advising the individual. Furthermore, judicial definitions, even if rendered in time to aid the lawyer in advising his client, may sometimes be too technical to help the individual to know that he should seek legal advice." (Emphasis supplied.)

See also *Freund, The Use of Indefinite Terms in Statutes,* 30 Yale L.J. 437, 450.

Defendants contend that the term "cost" contained in Section 3 of the Act, which prohibits selling of goods at less than cost for the purpose of injuring competitors and destroying competition, is so vague and indefinite that men of common intelligence must of necessity guess at its meaning and differ as to its application. They argue that this arises from the complexity of the petroleum industry involving as it does discovery of oil, its production and transportation, as well as the manufacture of gasoline. They say that there is a multitude of costs, including those which arise from the acquisition of crude oil, those incident to the refining of crude oil, including the production of numerous by-products, cost of items which must be purchased and mixed with refined products, cost of transportation, and the cost of sales at retail of not only petroleum products but other automobile items. They say that it is impossible to allocate the cost of processing crude oil to the many by-products which result from the processing. Shall it be on the basis of the price of each product or on the basis of the intrinsic value of each item? They point out that some residual products have little or no market value. They pose the question whether a portion of overhead must be applied to them.

Defendants also point out that the Act requires that overhead costs of production be taken into account and that "cost of doing business" incident to distribution be considered. They point out also that the statute is silent as to how this allocation or apportionment shall be made.

Defendants' viewpoint has some support in the cases. It is present in the dissenting opinion of Justice Simpson in *State v. Sears,* 4 Wash. (2d) 200, 103 P. (2d) 337. It is also set forth in the following: *Balzer v. Caler,* 74 P. (2d) 839 (Cal. App. 1937), *aff'd.* 11 Cal. 663, 82 P. (2d) 19; *Neeld v. Automotive Products Credit Assn.,* 21 N.J. Super. 159, 90 A. (2d) 558, *Comment, Sales Below Cost Prohibitions: Private Price Fixing Under State Law,* 57 Yale L.J. 391, *Hamilton, Cost as a Standard for Price,* 4 *Law and Contemporary Problems* 321. See also the penetrating analysis of Professor Homer Clark, *Statutory Restrictions on Selling,* 11 Vanderbilt Law Review, 105, at pp. 107 and 119.

The question whether the term "cost" or "cost of doing business" is so vague and indefinite that it violates the substantive due process requirement of the Fourteenth Amendment to the Federal Constitution or is so vague that it is wholly impractical is not of first impression in Colorado. The statutory provision now in issue was before the Court in 1940 in *Dikeou v. Food Distributors Association,* 107 Colo. 38, 108 P. (2d) 529. Defendants emphasize the fact that the Court there stated "The constitutionality of the Act is not challenged either in the briefs or assignments of error." Notwithstanding this, however, the Court proceeded to comment on the validity of the statute and also to consider the question of sufficiency of the standard "cost" and "cost of doing business." On the question of constitutionality, it was said:

" * * * Substantially similar acts have been held by four state supreme courts not to be in violation of federal and state due-process-of-law clauses. *Wholesale Tobacco Dealers v. National Candy & Tobacco Co.,* 11 Cal.

(2d) 634, 82 P. (2d) 3; *Associated Merchants v. Orme-sher,* 107 Mont. 530, 86 P. (2d) 1031; *Rust v. Griggs,* 172 Tenn. 565, 113 S.W., (2d) 733, 86 U. of Pa. L. Rev. 780; *State v. Langley,* 53 Wyo. 332, 84 P. (2d) 767. It has been said that the true purpose of acts of this character was to eliminate destructive price competition and the economic effect of the sale of 'loss leaders.' It also has been argued that free competition may as easily be destroyed by the unfair practices of below-cost selling as by combinations in restraint of trade. Whether such arguments are sound or such legislation is wise or unwise, is solely a problem for the lawmakers. It is not necessary to cite the numerous authorities which have so held."

In resolving the question of the sufficiency of the "cost" and "cost of doing business" standard, the Court followed the ruling of the Supreme Court of Wyoming in *State v. Langley,* 53 Wyo. 332, 84 P. (2d) 767 which had in turn been adopted by the Montana Court in *Associated Merchants of Montana v. Ormesher,* 107 Mont. 530, 86 P. (2d) 1031, wherein it was held that "reasonableness" is a proper guide in the interpretation of these terms. The Court, in the *Dikeou* case, continued:

"Counsel for defendants cite the case of *Associated Merchants v. Ormesher,* supra, as authority on the meaning of the term 'cost' under a similar act. It was urged in that case that under the statute, definitions of the terms used were too vague and indefinite to afford a proper basis for a determination of the 'cost of doing business' so as to satisfy constitutional requirements. In passing upon this question the court approved the following language from the opinion in *State v. Langley,* supra:

" 'Hence, in the absence of provisions to the contrary, we must presume that the legislature did not intend to prescribe that the cost must be absolutely exact, and that it must be based upon the precise method of accounting which any one merchant might adopt, but meant, by "cost," what business men generally mean,

namely, the approximate cost arrived at by a reasonable rule. Hence, if a particular method adopted by a merchant cannot, under the facts disclosed, be said to be unreasonable, and does not disclose an intentional evasion of the law, the method so adopted should be accepted as correct. In other words, all that a man is required to do under the statute is to act in good faith. Hygrade Provision Co. v. Sherman, 266 U.S. 497, 69 L. Ed. 402, 45 Sup. Ct. 141. In that view of the case, the standard set by the legislature is virtually reduced to one of "reasonableness." And it is held that "reasonableness" as "a standard of an act, which can be determined objectively from circumstances, is a common, widely-used, and constitutionally valid standard in law." People v. Curtiss (Cal. App.), 300 Pac. 801, 805, and cases cited.' This, in our opinion, is a fair statement and meets with our approval.

"There is no contention here that the cost must be absolutely exact. Good faith, however, is necessary. The evidence warrants a finding of lack of good faith in the instant case. This involves also the reasonableness of the theoretical separation of the service department and the cash-and-carry department in ascertaining the cost of doing business. This separation is seriously challenged by plaintiff. The Montana case cited above holds that what is meant by 'cost' is 'what business men generally mean, namely, the approximate cost arrived at by a reasonable rule.' "

The conclusion as set out above in the *Dikeou* case is at variance with the assumption of defendants that the evidence which seeks to establish "cost" and "cost of doing business" must be sufficient to establish these facts with mathematical precision and exactness. The *Dikeou* case teaches that the proof need not exist to that high degree of certainty. This is especially true in an injunction action such as the one before us wherein the decree is prospective only and does not affect conduct which occurred prior to its issuance. Numerous other

decisions uphold this "rule of reason" as applied to the cost standard against contentions similar to those made by defendants. In one leading case, that of *Wholesale Tobacco Dealers Bureau of Southern California, Inc. v. National Candy & Tobacco Co.,* 11 Cal. (2d) 634, 82 P. (2d) 3, the Court pointed out that it was unable, at the stage at which the case was presented, to determine whether the defendants' apprehensions were well founded. The particularly applicable portion of the opinion reads:

" * * * Respondent and its supporters urge that simple and proper accounting practices will disclose the necessary information. Under such circumstances the issue cannot and should not be determined in this proceeding. When and if the issue is properly presented against a proper factual background with appropriate evidentiary material, this court can then and only then determine the reasonableness of this provision. It may well be that such evidence will disclose that the apprehensions of appellant are groundless. Moreover, the present case involves an application for an injunction. We are not now considering the criminal provisions of the act. In an equity case the trial court 'has broad and flexible discretionary powers, and can, and undoubtedly would, deny injunctive relief where such relief would be inequitable.' Max Factor & Co. v. Kunsman, supra. It should also be mentioned that in Rust v. Griggs, supra, the Tennessee supreme court upheld a provision in relation to cost of doing business that on its face appears to be more vague and uncertain than the one here involved."

See also *Hill v. Kusy,* 150 Neb. 653, 35 N.W. (2d) 594; *Fournier v. Troianello,* 332 Mass. 636, 127 N.E. (2d) 167; the Court there upheld a prohibition relating to advertising to sell below cost against the argument that it was too vague to be enforced; *People v. Pay Less Drug Store,* 25 Cal. (2d) 108, 153 P. (2d) 9; *State v. Ross,* 259 Wis. 379, 48 N.W. (2d) 460; *State v. Walgreen Drug Co.,* 57

Ariz. 308, 113 P. (2d) 650; *Rust v. Griggs,* 172 Tenn. 565, 113 S.W. (2d) 733 (cited and relied on in the *Dikeou* case); *Moore v. Northern Kentucky Independent Food Dealers Assn.,* 286 Ky. 24, 149 S.W. (2d) 755; it was here held that the Act was not invalidly vague.

*F & A Ice Cream Co. v. Arden Farms Co.,* 98 F. Supp. 180, arose under the Robinson Patman Act. It evaluates the contention that Section 3 of that Act which prohibits the sale of goods at "unreasonably low prices for the purpose of destroying competition or eliminating a competitor" is invalid and upholds that section as a sufficiently definite standard.

*State v. Consumers Warehouse Market,* 183 Kan. 503, 329 P. (2d) 638, upheld a percentage cost of doing business standard. Cf. *State v. Northwest Poultry & Egg Co.,* 203 Minn. 438, 281 N.W. 753, which invalidated a statute which required purchasers of certain farm products for manufacture or resale to deduct from the purchase price paid "actual cost of transportation by wagon or truck." It was there held that failure on the part of the Legislature to prescribe a method of apportionment of actual cost or to define actual cost was fatal. See Ann. 118 A.L.R. 506, 128 A.L.R. 1126.

### III.

The fact that the Act is difficult to administer does not justify a ruling of invalidity and it would appear that the defendants' "complexity" argument finally reduces itself to this. In *People v. Pay Less Drug Store,* supra, the Court commented:

" * * * any difficulty in computing cost is a factual one, and statutes are not to be declared invalid because in their application factual difficulties may arise."

In *Hill v. Kusy,* supra, the Nebraska Court said:

" * * * Mere difficulty of application in the processes of litigation is not enough to enable a court to say that a statute is unconstitutional."

See also *Moore v. Northern Kentucky Independent Food Dealers, Assn.,* supra, 2 *Sutherland, Statutory Con-*

*struction* 446, 447. The author's comments regarding the effect of difficulty of application are pertinent:

" * * * It is the duty of courts however to endeavor by every rule of construction to ascertain the legislative product unless it violates a specific constitutional prohibition. There is no constitutional provision which authorizes a court to declare an act invalid for uncertainty. In spite of this lack of constitutional authority, courts frequently have asserted that if after exhausting every rule of construction no sensible meaning can be given to a statute or if it is so incomplete that it cannot be carried into effect it must be pronounced inoperative and void. Such decisions appear to be unwarranted exercises of judicial power. No matter how difficult the task may be a court should not escape its responsibility to interpret by declaring the act invalid. An analysis of the decided cases indicates that determinations of invalidity based on uncertainty frequently reflect antagonism to legislative policy rather than uncertainty concerning legislative meaning. * * * "

The complaint here follows the formula prescribed by statute with respect to definitions of costs as applied to "production" and relative to "cost of doing business" or "overhead expense." The defendants' costs are alleged in concrete and particular terms and the plaintiff urges that it can establish these allegations by competent and meaningful evidence. We are in no position to decide whether such evidence is available and is adequate. To hold that defendants' unsupported arguments should be accepted and that the allegations of the complaint should be rejected would require us to engage in speculation and to take judicial notice of facts not subject to judicial notice.

It is, of course, possible that on the trial of the case plaintiff will find it impossible to establish by competent and material evidence the allegations of its complaint and if this should happen defendants would have their remedy of dismissal of the complaint. The mere existence

of this possibility, however, does not justify us in anticipating what we consider to be, not a problem of constitutionality, but a problem of sufficiency of the evidence.

## IV.

 It is also contended in various ways that this particular statute is not in harmony with the present economic climate; that it was adopted during the N.R.A. era and that it is no longer suited to present day economic problems. We can only say that it is not for the courts to determine questions of economic policy. The Legislature has concluded that the method adopted is a proper one for combating predatory competition and it is not our function to substitute our judgment for that of the General Assembly. The conclusion of the Legislature that predatory price wars are contrary to the interests of the public and that temporary public price advantages will ultimately lead to monopoly and prices uncontrolled by the forces of competition is not so ill founded as to be contrary to the law or the constitution. See Ann. 118 A.L.R. 506, 508, 510, 511; 128 A.L.R. 1127, 1129, 1131, and see *Wholesale Tobacco Dealers Bureau of Southern California, Inc. v. National Candy & Tobacco Co.,* supra.

## V.

Some of the defendants have requested a ruling (assuming reversal on the main question) that the *temporary* injunction is not a remedy authorized by statute and that as a consequence the plaintiff's request that the case be remanded for hearing on its motion seeking a *temporary* injunction is improper. The trial court did not determine this question and there is nothing before us on this review requiring such a decision. We note, however, the presence of undetermined motions. The order of disposition of these matters is for the trial court.

Our conclusions are:

1. That the constitutionality of the statute in question may be raised and considered on motion to dismiss.

2. That in this, an injunction action (prospective in

effect), the terms "cost" and "cost of doing business" are not proved to be so indefinite and uncertain within the meaning of the appropriate rule as to provide no basis for the adjudication of rights.

3. That reasonableness is to be taken as a guide in determining validity of the standard and sufficiency of the evidence.

4. That the questions here raised are not shown to be constitutional in nature; and the suggestion that the statutory standards prescribed are impractical and competent proof can not be produced, are questions which must await the trial of the case.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.

MR. JUSTICE KNAUSS and MR. JUSTICE DAY dissenting.

MR. JUSTICE HALL not participating.