### No. C-1673

**The People of the City of Lakewood By and on behalf of the People of the State of Colorado v. Guido O. Haase and Diamond Re-Serv-al, Inc.**

(596 P.2d 392)

Decided June 11, 1979.

48

Gorsuch, Kirgis, Campbell, Walker & Grover, William H. McEwan, Robert E. Warren, Jr., Gary S. Cohen, for petitioner.

Robinson & Scheurer, P.C., Richard J. Scheurer, for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The respondents were acting as agents of the Bear Creek Water and Sanitation District ("District"). They were charged in a Lakewood municipal court with working in a public street of the City of Lakewood without first obtaining a permit. That court found that, in light of the statutory powers granted the District, the City had no authority to require the District to obtain a permit to effect a street cut to repair the District's water lines; and it granted a motion to dismiss at the conclusion of the evidence. The district court affirmed the municipal court. We granted certiorari and now reverse.

The District was organized under section 32-4-101, *et seq.,* C.R.S. 1973, and engaged in the delivery of domestic water. It had laid its mains and lines in and was serving the area here involved. Thereafter the City annexed this area. In April 1976 it was apparent from the surface at 2591 South Garland that there was water leakage either in the District's main or the property owner's service line. The District's main was about 4 1/2 feet below the surface of the street. The District instructed the respondents to make an excavation at the point of the connection of the service line with the main to determine the location of the leak. The respondents applied to the City for a street cut permit. This was not issued, apparently for the reason that it should have been made in the name of the respondents rather than the District. The respondents proceeded to make the excavation.[1]

Sections 12.03.020(b) and 12.04.030 of the *Lakewood Municipal Code* provide:

"This chapter shall be liberally construed, so as to effect the intention hereof to protect and preserve the public ways of the city for the uses thereof, and for the protection of the people of the city and of all the persons using or relying upon the public ways of the city.

"It is unlawful for any person to make, construct, reconstruct, or alter any opening, excavation, tunnel, sidewalk, curb, gutter, driveway, street, or to perform any other work of any kind within the public way which will result in physical alteration thereof, unless such person shall have first obtained a permit for the performance of such work, and unless such work shall be performed in conformity with the terms and provisions of this chapter and of the permit or permits issued hereunder, except as hereinafter specifically provided."

The ordinances further provide that all such work shall be performed in conformity with the requirements of the City's engineering regulations and specifications and design standards. Section 12.04.170.

The statutory delegation of police power in the respect here involved is in section 31-15-702(1)(a)(II), C.R.S. 1973 (1977 Repl. Vol. 12): "The governing body of each municipality has the power . . . to regulate the openings therein for the laying-out of gas or water mains and pipes . . . ." At this juncture we hold that this delegation of police power by implication includes the regulation of openings for the purpose of repair of mains and pipes.

The District relies upon the following statutory delegation of power to it:

---

[1] This disclosed that the leak was in the service line. The property owner had someone else make the repair and replace the surface.

"To construct and maintain works and establish and maintain facilities across or along any public street or highway . . . but the board of county commissioners of any county in which any public streets or highways are situated which are to be cut into or excavated in the construction or maintenance of any such facilities has authority to make such rules as it deems necessary in regard to any such excavations and may require the payment of such reasonable fees against the district as may be fixed by it to insure proper restoration of such streets or highways . . . ." Section 32-4-113(1)(k)(I), C.R.S. 1973.

This court has ruled on this issue in *Sheridan v. Valley Sanitation District,* 137 Colo. 315, 324 P.2d 1038 (1958). There the district sought to condemn rights-of-way through and across public streets in the Town of Sheridan for the purpose of constructing and maintaining a sewer line. Sheridan attempted to extract excessive concessions from the district under a statute which then provided that there could not be operation of sewage facilities unless the municipality approved the location thereof. We held that the statute did not give the city the right to veto the project. It was ruled:

"A reasonable construction of the section of the statute in question is that the municipality may require reasonable, safe and healthful construction methods and can withhold its consent unless given assurance that injury to users of its streets will not result . . . ."

In *Glendale v. City & County of Denver,* 137 Colo. 188, 322 P.2d 1053 (1958), this court held that a constitutional grant of eminent domain power to Denver allowed it to work in the streets of Glendale in order to lay pipe line, and concluded with the following caveat:

"What we have said is not to be understood as holding that Denver can with impunity and without regard to local ordinances of a traversed municipality, construct its sewer lines in its streets irrespective of water lines, water works, sewer or wells in line of or in the vicinity of the proposed construction. Denver in its brief concedes that 'at the point where the public health and safety become involved, the municipality traversed could withhold its consent unless proper, safe and healthful construction methods were followed. To that extent and when construction becomes a fact, we concede that the Defendant in Error herein may be bound and may be required to comply with reasonable construction standards lawfully established by the Plaintiff in Error.' "

█ The District contends that certain changes in statute negate the authoritativeness of *Sheridan* and *Glendale.* Not so. The answer remains the same:   as between the proprietary powers given to the District and the police power to protect its citizens and streets given to the City, the police power prevails. *National Food Stores, Inc. v. North Washington Street Water and Sanitation District,* 163 Colo. 178, 429 P.2d 283 (1967).

■ Both the municipal court and the district court made much of the fact that the District had its lines in place prior to the area becoming part of the City. We note that the respondents hardly argued this point. The two courts are in error. The City's delegated police power is applicable to a water and sanitation district whether or not the district existed before the city. *Morrison v. Town of Lafayette,* 67 Colo. 220, 184 P. 301 (1919).[2]

■ There is no issue here concerning the reasonableness of the City's ordinance or its enforcement thereof. We rule that the City, acting reasonably, has the right to require a street cut permit of the District or those acting in its behalf.

■ The municipal court also granted a motion to dismiss as to a charge that respondents violated the City's ordinance requiring notice of emergency work about to be commenced. Section 12.04.180, *Lakewood Municipal Code.* The municipal court predicated its action upon its finding that the City had constructive notice that there would be emergency repair by reason of the application of a permit made by the respondents in the name of the District. While for the reasons already given, the last mentioned ordinance is applicable to the District, we see no need to review the matter of constructive notice and, therefore, do not interfere with the municipal court's judgment in this respect.

The judgment is reversed and the cause returned to the district court for remand to the municipal court with directions to overrule the motion to dismiss relating to ordinance 12.04.030 and to proceed from that point.

---

[2] We need not explore whether the City's police power here is inherent, as was discussed in *Sheridan v. Valley Sanitation District, supra.*