**SOUTH FORK WATER AND SANITATION DISTRICT, Plaintiff–Appellant,**

v.

**TOWN OF SOUTH FORK, Colorado, Defendant–Appellee.**

No. 08CA1969.

Colorado Court of Appeals, Div. III.

Aug. 20, 2009.

Icenogle, Norton, Smith, Blieszner, Gilida, Pogue, P.C., Charles E. Norton, J. Michael Keane, Denver, Colorado, for Plaintiff–Appellant.

Leavenworth & Karp, P.C., Loyal E. Leavenworth, Karl J. Hanlon, Glenwood Springs, Colorado, for Defendant–Appellee.

Opinion by Judge CRISWELL.[*]

Plaintiff, South Fork Water and Sanitation District (the District), appeals the trial court's judgment dismissing its claim against defendant, Town of South Fork (the Town), which sought to enjoin the Town from obtaining water rights and private water systems, because the District had not consented to such acquisitions. We affirm.

## I. The Trial Court's Findings

The factual findings of the trial court, which neither party asserts are not supported by the evidence, disclose the following:

The Town is a statutory town established in 1992, from which date it has been authorized to provide water services to its residents pursuant to section 31–15–708, C.R.S.2008, and to exercise the other police powers granted to such municipalities under Title 31 of the Colorado Revised Statutes.

The District is a quasi-municipal corporation that was originally created in 1977. A substantial portion of the Town is also within the territorial boundaries of the District, and the District has been providing sanitary sewerage services to those residents in that portion of the Town for a number of years. However, it was not until December 1994, some two years after the Town's incorporation, that the District was granted authority to provide water services to residents within its boundaries.

As of the date of the trial in this case, which was nearly fourteen years after the District was granted authority to provide water services, it is undisputed that the District was not providing any water services to any of its residents, nor has it ever done so. Indeed, it does not now own any water rights, and it has never owned any such rights.

In 2001, the District paid to obtain engineering plans for installing wells and water main lines for a central water system. However, the District has taken no steps to create such a system, because it has found no means to finance its construction. In addition, in 2006, the District surveyed its constituents, and a majority rejected the proposal that the District provide water services to them.

In 2004, and again in 2005, the District was offered an opportunity to acquire an existing private water system, and in both instances that offer was refused, primarily because of a lack of the financial means to acquire the system.

Based on these historical facts, the trial court found that the District "has no ability or intent to pursue or implement a municipal water system."

The Town also does not presently own, nor has it ever owned, any water rights, nor has it ever provided any water services to its residents. However, as a part of its Land Use and Development Code, the Town requires new subdivisions to dedicate water rights and water facilities to the Town, and

---

[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. I, § 5(3), and

§ 24–51–1105, C.R.S.2008.

such dedication becomes a part of the subdivision improvement agreement that is executed between the Town and the subdivision developer. In 2006 and 2007, the Town negotiated three such agreements, requiring the dedication of water rights and water facilities. In addition, in 2007 and 2008, the Town negotiated three letters of intent with the owners of private water systems to acquire those systems. While two of these letters of intent had expired as of the date of the trial in this case, the Town was attempting to negotiate an extension of each of those agreements.

## II. The Trial Court's Conclusions

The District instituted this action seeking to enjoin the Town from acquiring water rights or private water systems, because the Town had not obtained the District's consent to do so, as allegedly required by section 31–35–402(1)(b), C.R.S.2008. This statute provides in pertinent part:

[N]o *water service* or sewerage service or combination of them shall be *furnished* in any *other municipality* unless the *approval* of *such other municipality* is obtained as to the territory in which the service is to be rendered.

§ 31–35–402(1)(b) (emphasis added).[1]

However, in *Town of Sheridan v. Valley Sanitation District*, 137 Colo. 315, 324 P.2d 1038 (1958), the supreme court held that the "veto power" granted by this statute must be exercised in a reasonable manner for the benefit of the public health, safety, and welfare. It is not an absolute power, but one that is conditioned upon serving the public welfare.

In this respect, while the trial court made no specific reference to his testimony, the District's manager explained the District's motive in opposing the Town's acquisition of water rights and facilities in these words:

Because we are better suited to provide [water services]. The people of South Fork put the district in place long before the town, to provide these services,[2] but they—if they [the residents of the District] don't want to pay for them, we can't force it on them.

Relying upon the principle established by *Town of Sheridan*, the trial court concluded:

A reasonable construction of [section 31–15–402(1)(b) ] is that a municipality cannot exercise its veto in such a manner as to deny another municipality the lawful exercise of its lawful powers to provide to its inhabitants the use of water facilities, where it has itself failed to provide the same. If such an absolute right of veto over water facility development were to exist, it would prevent the development of beneficial uses and purposes. Such a construction would defeat the purposes of the entire enactment.

In addition, it also concluded, based upon *People of City of Lakewood v. Haase*, 198 Colo. 47, 51, 596 P.2d 392, 394 (1979), that the Town's exercise of its police powers superseded, and in effect trumped, the veto power granted to the District by the pertinent statute.

## III. Law of the Case

In its motion for reconsideration filed with the trial court, the District contended that a previous order of the court, granting it a partial summary judgment, constituted the law of the case. On appeal, the District claims that the finding in that order that "the Town may not go forward to provide water services within the District's boundaries without permission from the District" is binding. We disagree.

The law of the case doctrine is a discretionary rule of practice based on considerations of judicial economy and finality. It recognizes that the trial court's prior relevant rulings in the same case should generally be followed. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 149 (Colo.2007). However, any order, however denominated, that does not constitute a final judgment

---

1. The parties agree that each of them is a "municipality" for purposes of this statute. *See* § 31–35–401(4), C.R.S.2008 (defining "municipality").

2. This is factually inaccurate; the Town was incorporated about two years before the District was granted the authority to provide water services.

remains subject to revision or modification at any time before the entry of such a judgment. C.R.C.P. 54(b); *Forbes v. Goldenhersh*, 899 P.2d 246, 249 (Colo.App.1994) (prior grant of partial summary judgment may be reversed in later proceedings).

■ Here, the trial court's prior order was not certified as a final judgment, and therefore, it could be modified at any time before a final judgment entered. Thus, the trial court's later ruling denying the District declaratory relief did not violate the law of the case doctrine.

## IV. Application of the Statute

The District contends the trial court erred in its interpretation of section 31–35–402(1)(b), and in its reliance on *Town of Sheridan*, in determining that the power granted by that statute must be exercised in a reasonable manner consistent with the health, safety, and welfare of the residents. We perceive no error.

■ The interpretation of a statute involves a question of law subject to de novo review. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000). To determine the legislature's intent, we first look to the plain language of the statute. *C.S. v. People*, 83 P.3d 627, 634–35 (Colo.2004). When reviewing the language of a statute, we read words and phrases in context and construe them according to their common usage. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006) (citing *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo.2004)). If the statutory language is clear and unambiguous, we do not engage in further statutory analysis. *Klinger*, 130 P.3d at 1031.

■ However, if the language is ambiguous, we may consider other aids to statutory construction, such as the consequences of a given construction, the ends to be achieved by the statute, and its legislative history. *See* § 2–4–203, C.R.S.2008. A court also must presume that the legislature intended a just and reasonable result and must avoid a statutory interpretation that leads to absurd results. *People in Interest of A.R.M.*, 832 P.2d 1093, 1096 (Colo.App.1992).

At the time *Town of Sheridan* was announced, the statute included the following limitation:

[N]o *sewerage facilities* shall be *operated* in whole or in part in any other municipality unless the approval of such other municipality in the territory in which the *facilities will be located* is obtained.

Ch. 244, sec. 2(b), § 139–52–2(2), 1949 Colo. Sess. Laws 714 (emphasis added).

Currently, the statute reads:

[N]o *water service or sewerage service* or combination of them shall be *furnished* in any other municipality unless the approval of such other municipality is obtained as to the territory in which the *service is to be rendered* . . . .

§ 31–35–402(1)(b) (emphasis added).

From a comparison of the two statutes alone, it is evident that the amendments to the statute were intended to extend the statute's applicability to water services, as well as to sewerage services. In addition, it made clear that the statute was applicable if "services" were to be "furnished" in another municipality, even if no "facilities" were to be physically located in that "other municipality."

However, the plain language of this statute is unambiguous only in those situations where the two municipalities' territorial boundaries do not overlap. In those instances, the municipality is attempting to exercise its service authority on an extraterritorial basis by providing services to nonresidents, and the statute requires the consent of the other municipality.

Here, however, the Town does not seek to exercise any of its powers on an extraterritorial basis. It seeks to serve only its own residents. One might well question, then, the applicability of the statute to such a circumstance. Indeed, because the statute does not specifically speak to such a case, it could well be regarded as ambiguous with respect to this point. *See People v. Carey*, 198 P.3d 1223, 1229 (Colo.App.2008) ("A statute may be ambiguous if it is silent on an issue that would be expected to be within its scope.").

■ Nevertheless, applying the rules of statutory construction, as we must, we conclude that the trial court properly concluded that the authority granted by the amended statute must still be exercised in a reasonable manner for the benefit of public health, safety, and welfare in accordance with the *Town of Sheridan* decision.

The District contends that *Town of Sheridan* does not apply here because the statute at issue in that case has been amended and because this case involves only statutory rights, and no constitutional considerations are involved. In addition, it argues that, even if the principle established by that case is applied, the District's refusal to consent to the Town's acquisition of water rights and private systems was reasonable. We disagree.

In *Town of Sheridan*, the sanitation district sought to condemn rights of way and easements outside its boundaries and through and across two of the public streets in the Town of Sheridan, a statutory town, for the construction and maintenance of a sewer line. *Town of Sheridan*, 137 Colo. at 316, 324 P.2d at 1039. The Town of Sheridan refused to issue permits requested by the sanitation district and withheld its consent to the construction. *Id.* at 318–19, 324 P.2d at 1040.

The supreme court concluded that, under constitutional provisions establishing the right to eminent domain, the sanitation district was authorized to condemn land. It also concluded that the Town of Sheridan was required to exercise its statutory veto power over any such condemnation in a reasonable manner, "consistent with the police power in the protection of the health, safety and welfare of the inhabitants of the municipality." *Id.* at 321, 324 P.2d at 1041. The supreme court recognized some tension between the statutory veto power and the constitutional right of eminent domain. However, interpreting the statute to avoid any conflict, the court held that "the legislature merely intended to recognize the inherent power of a municipality to exercise its police power reasonably to protect its inhabitants." *Id.* at 322, 324 P.2d at 1042. Because the Town of Sheridan was admittedly withhold-

ing its consent as a bargaining tool, and not for any purpose serving the public health, safety, or welfare, the statute did not authorize the exercise of the veto power in those circumstances.

Although the issue here does not involve the power of eminent domain or other constitutionally mandated powers, the principle recognized in *Town of Sheridan* provides clear guidance in interpreting the legislative intent inherent in section 31–35–402(1)(b). *Town of Sheridan* emphasizes the importance of a municipality's police power and the ability of a municipality to adopt rules that protect the health, safety, and welfare of its inhabitants. *Town of Sheridan*, 137 Colo. at 321, 324 P.2d at 1041–42.

Contrary to the District's assertion, the amendments to the pertinent statute had no effect upon the principle established by *Town of Sheridan*. Nothing in the statute changed the nature of a municipality's veto power simply by extending that power to water services, as well as sewerage services. Moreover, given the decision in *Town of Sheridan*, it would be expected that, if the General Assembly had intended to reject the interpretation previously adopted by the supreme court, it would have done so explicitly. *See People v. Swain*, 959 P.2d 426, 430–31 (Colo.1998)("Under an established rule of statutory construction, the legislature is presumed, by virtue of its action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior judicial construction."). Indeed, in *City of Lakewood v. Haase*, 198 Colo. at 50–51, 596 P.2d at 394, the supreme court specifically rejected the assertion that the changes to the statute negated the continued applicability of *Town of Sheridan*.

■ We also agree with the trial court that where, as here, one municipality has not yet provided water service within its territory, another municipality may use its police powers to protect the health, safety, and welfare of its residents by requiring dedications of water which may be used for the provision of water service. *See Town of Sheridan*, 137 Colo. at 321–22, 324 P.2d at 1042 ("We think it clear that the legislature

did not intend to authorize sewer districts and provide for their management, operation, control and financing on the one hand, and on the other give a municipality bordering on the district through which the facilities must of necessity be extended, either extensively or slightly, the absolute right of veto over the project.").

We disagree with the District that the evidence before the trial court established that the motive for its refusal to consent to the Town's acquisition of water rights and private water systems was based upon the public welfare. The only testimony respecting the reason for such refusal came from its manager, who said only that the District was formed long before the Town to provide water services. Historically, however, the Town was authorized to provide its residents with water service before the District was given such authority.

In any event, irrespective of which municipality was first authorized to provide such services, the undisputed evidence is that the District has neither the intent nor the financial wherewithal to establish or to operate a municipal water system. It has specifically rejected offers made to it to acquire private systems that could be the precursor of a municipal system.

In contrast, the Town, in the face of the District's refusal to act, has taken affirmative steps to acquire water rights and private water systems as initial steps to the ultimate establishment of a municipal water system.

The trial court found that the District has no ability or intent to pursue or implement a municipal water system, and that the Town has a realistic possibility of operating a water system in the future. These findings, combined with its recognition that *Town of Sheridan* prevents a municipality from exercising its veto power so as to deny another municipality the ability to provide its inhabitants access to water facilities where the first has failed to provide such access, indicate that it determined the District's exercise of the veto power here to be unreasonable. This determination is supported by the record. Therefore, we conclude the trial court correctly applied section 31–35–402(1)(b) and we uphold its dismissal of the District's complaint.

The judgment of the trial court is affirmed.

Judge DAILEY and Judge TERRY concur.

