[Civil No. 4301. Filed May 20, 1941.]

[113 Pac. (2d) 650.]

THE STATE OF ARIZONA, Appellant, v. WAL-
GREEN DRUG CO., a Corporation, Appellee.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Special Assistant Attorney General, for Appellant.

Mr. Charles Bernstein, for Appellee.

Messrs. Snell & Strouss, Mr. Mark Wilmer and Mr. George M. Hill, *Amici Curiae.*

LOCKWOOD, C. J.—The State of Arizona, plaintiff, filed this action in the superior court of Maricopa County against Walgreen Drug Co., a corporation, defendant. The complaint set forth in substance that defendant had repeatedly violated the provisions of chapter 39, session laws of Arizona, 1939, commonly known as the "Unfair Sales Act," and asked for an injunction against defendant forbidding it from offering to sell any commodities below cost "as said cost is defined by the said chapter 39, session laws of Arizona, 1939, except as said sales may be allowed under the exemptions contained in section 6 of said chapter 39." Defendant moved to dismiss the action because the complaint failed to state facts upon which injunctive relief could be granted. The court, after consideration thereof, granted the motion and the action was dismissed, whereupon the matter was brought before us for review.

The real question before us is whether chapter 39, *supra,* is a constitutional and valid exercise of the power of the legislature. The chapter declares the policy and purpose of the chapter in section 7 thereof, as follows:

"Declaration Of Policy And Purpose. It is hereby declared that the practice of selling certain items of merchandise below cost in order to attract patronage is generally a form of deceptive advertising and an unfair method of competition in commerce. Such

practice causes commercial dislocations, misleads the consumer, works back against the farmer, directly burdens and obstructs commerce, and diverts business from dealers who maintain a fair price policy. Bankruptcies among merchants who fail because of the competition of those who use such methods result in unemployment, disruption of leases, and non-payment of taxes and loans, and contribute to an inevitable train of undesirable consequences, including economic depression, and it is hereby declared to be the policy of this state to protect the well-being of its citizens through the prevention, suppression and elimination of unfair methods of competition. The purpose of this act is to carry out such policy in the public interest.''

The legislature then, in section 3 of the chapter, declared certain acts to be a violation of the policy, as follows:

''Unfair Sales And Competition. It is hereby declared that any advertising, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than cost as defined in this act, with the intent, or effect, of inducing the purchase of other merchandise, or of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare, and are unfair competition and contrary to public policy and the policy of this act, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create monoply in any line of commerce.''

And in sections 4 and 5 provided two methods of enforcing it, one by a criminal prosecution, and the other by injunction, the latter being the course followed by plaintiff in the present case.

The argument of defendant is that the chapter is invalid for three reasons (a) that the general principle of fixing prices is unconstitutional, (b) that even if such regulation of business may be within legisla-

tive power, the particular chapter is void on the ground that the definition of "cost" set forth therein is indefinite and uncertain, and (c) that it does not require any intent to engage in unfair competition as defined by the chapter to fix a liability for violation thereof.

So far as the legislative right to fix prices to be charged by private business is concerned, we think it has been determined by the well known case of *Nebbia* v. *New York*, 291 U. S. 502, 54 Sup. Ct. 505, 510, 78 L. Ed. 940, 89 A. L. R. 1469. Therein the court considered the entire question of the right of the legislature to regulate prices to be charged by private business. In its opinion it laid down the now existing rules of constitutional law on the subject so plainly and definitely that we quote therefrom somewhat fully:

" . . . These correlative rights, that of the citizen to exercise exclusive dominion over property and freely to contract about his affairs, and that of the state to regulate the use of property and the conduct of business, are always in collision. No exercise of the private right can be imagined which will not in some respect, however slight, affect the public; no exercise of the legislative prerogative to regulate the conduct of the citizen which will not to some extent abridge his liberty or affect his property. But subject only to constitutional restraint the private right must yield to the public need. . . .

"The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. . . .

"But we are told that because the law essays to control prices it denies due process. Notwithstanding the admitted power to correct existing economic ills by appropriate regulation of business, even though an indirect result may be a restriction of the freedom of contract or a modification of charges for services or the price of commodities, the appellant urges that direct fixation of prices is a type of regulation abso-

lutely forbidden. His position is that the Fourteenth Amendment requires us to hold the challenged statute void for this reason alone. The argument runs that the public control of rates or prices is *per se* unreasonable and unconstitutional, save as applied to businesses affected with a public interest; that a business so affected is one in which property is devoted to an enterprise of a sort which the public itself might appropriately undertake, or one whose owner relies on a public grant or franchise for the right to conduct the business, or in which he is bound to serve all who apply; in short, such as is commonly called a public utility; or a business in its nature a monoply. . . .

"The phrase 'affected with a public interest' can, in the nature of things, mean no more than that an industry, for adequate reason, is subject to control for the public good. In several of the decisions of this court wherein the expressions 'affected with a public interest,' and 'clothed with a public use,' have been brought forward as the criteria of the validity of price control, it has been admitted that they are not susceptible of definition and form an unsatisfactory test of the constitutionality of legislation directed at business practices or prices. These decisions must rest, finally, upon the basis that the requirements of due process were not met because the laws were found arbitrary in their operation and effect. But there can be no doubt that upon proper occasion and by appropriate measures the state may regulate a business in any of its aspects, including the prices to be charged for the products or commodities it sells.

"So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. . . . And it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise. With the wisdom of the policy adopted, with the ade-

quacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal. The course of decision in this court exhibits a firm adherence to these principles. Times without number we have said that the Legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power. . . .

"Price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the Legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty."

■ We hold, therefore, that the general economic policy and purpose of the chapter set forth in section 7, *supra,* is fully within the power of the legislature to adopt, and that any legislation falling within that policy and purpose is not subject to review by the courts unless, as stated in the Nebbia case, *supra,* it is "arbitrary, discriminatory, or demonstrably irrelevant to the policy the Legislature is free to adopt." Let us then determine whether the chapter is so drawn that the method of enforcing the legitimate purpose of the legislature becomes arbitrary, discriminatory or irrelevant. The principal attacks made thereon by defendant are that part of the definition of the cost upon which all prices are required by the chapter to be based is indefinite and uncertain, and that an intent to engage in unfair competition is not essential to either civil or criminal liability thereunder. The particular part of the definition questioned reads as follows:

" . . . and purchases made by retailers and wholesalers at prices which cannot be justified by prevailing market conditions within this state shall not be used in determining cost to the retailer and cost to the wholesaler, . . . " Section 2.

It is claimed that the method of determining *bona fide* costs set forth in the definition above is so indefinite and uncertain that the seller cannot determine just what the cost meant by the law is. Its argument on this point is substantially that no matter what be the price which it actually pays for the goods, the utmost good faith will not protect it from a conviction of violation of the law if a trial court or jury does not agree with its honest judgment as to whether such price was justified by "prevailing market conditions."

So far as we have been able to ascertain the question whether definitions like the one just quoted are too indefinite and uncertain to be enforceable has been specifically considered and determined in very few cases. In *Loughran Co.* v. *Lord Baltimore Candy & T. Co.*, 178 Md. 38, 12 Atl. (2d) 201, 205, the court said:

"Reverting to the provisions of Chapter 248, section 115 [Laws 1939] contains what are known as interpretation clauses, defining certain terms used in the Act. Subsection (d) thereof places this further restrictive qualification upon the method of cost calculation: 'Sales to consumers, retailers and wholesalers at prices which cannot be justified by existing market conditions within this state shall not be used as a basis for computing costs with respect to sales by retailers and wholesalers'. It does not specifically state who is to compute the cost referred to, but as the preceding subsections deal with the single subject of ascertainment of 'cost' of merchandise to the dealer, inferentially the 'cost' in this subsection is identical with that earlier mentioned, although the language of subsection (d) may seem somewhat obscure.

"Upon the dealer who would avoid transgressing the law there is thus placed the burden of first ascertaining what are the 'existing market conditions', then determining whether those conditions justify a certain price, and finally, upon the assumption that his analysis is correct and his judgment sound, utilizing that figure as a basis for his cost computation.

"But his conclusion is not controlling, for if his estimate of the situation be erroneous, and if in a judicial proceeding it be subsequently determined, as a fact, that the 'existing market conditions' did not justify a certain price, then his calculation, being based thereon, is vitiated; the result being that he stands as a violator of the law.

"It matters not that he acted in good faith, that his opportunities for acquaintance with market conditions within the State were limited, or that he honestly believed that those conditions, as he knew them, justified a given price."

And the act was held to be unconstitutional.

In State, on Complaint of *Lief* v. *Packard-Bamberger & Co.,* 123 N. J. L. 180, 8 Atl. (2d) 291, a similar definition appears, and a similar rule was followed.

It is true that in *Rust* v. *Griggs,* 172 Tenn. 565, 113 S. W. (2d) 733, an act containing like language was upheld, but there was no attack on the provision because it was indefinite and uncertain, but only on the ground that it violated the interstate commerce clause of the Federal Constitution. We have had a somewhat analogous question before us in the case of *State* v. *Garfield Bldg. Co.,* 39 Ariz. 45, 3 Pac. (2d) 983, involving the question of minimum wages. While the language of the statute and the particular issue involved were very different from that in the present case, this court held that the law was unconstitutional on the basis of the rule laid down by the Supreme Court of the United States in *Connally* v. *General Const. Co.,* 269 U. S. 385, 46 Sup. Ct. 126, 128, 70 L. Ed. 322. That court quoted approvingly the following language from *United States* v. *Capital Traction Co.,* 34 App. D. C. 592, 19 Ann. Cas. 68:

" 'The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will

reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.' ''

██ We are of the opinion that the definition objected to is so indefinite and uncertain that it is arbitrary and unreasonable and, therefore, unconstitutional. This, however, would not necessarily invalidate the entire chapter, for by section 8 thereof the different provisions are expressly declared to be severable, and the chapter is workable if the particular part of the definition quoted is eliminated.

██ We consider then the objection that the chapter imposes both civil and penal liability upon one who violates its provisions without any criminal intent. Upon a careful examination of section 3, *supra,* which states what constitutes a violation of the chapter, we think that while it is not explicitly stated therein that the particular thing done must be done with a criminal intent, the only reasonable implication from the entire language of the chapter is that such intent is an essential ingredient of a violation thereof. A similar construction has been given to statutes which fail, as does ours, explicitly to require the criminal intent. *People* v. *Kahn,* 19 Cal. App. Supp. (2d) 758, 60 Pac. (2d) 596; *Omaechevarria* v. *Idaho,* 246 U. S. 343, 38 Sup. Ct. 323, 62 L. Ed. 763.

██ It appears that the chapter, with the exception of the unconstitutional clause above referred to, is valid. The complaint, however, charges as follows:

" . . . the defendant corporation did advertise, offer to sell, and sell at retail, the items of merchandise hereinafter named, at less than cost to the said defendant corporation, *as defined by Chapter 39, Session Laws of Arizona, 1939,* as a retailer of such merchandise to the consumers thereof; . . . " (Italics ours).

and as the definition set forth in chapter 39, *supra,* was, in part, unconstitutional, we think the complaint was demurrable. Since plaintiff declined to amend its complaint so that it would conform with the constitutional part of the definition, we think the trial court properly dismissed the action.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.