630 P.2d 38

**BASELINE LIQUORS, an Arizona corporation, for itself and as representative in behalf of all persons, save for Defendants in this cause, owning and operating Series 9 liquor licenses within Maricopa County, State of Arizona, at and subsequent to July 1, 1977, Plaintiff-Appellant,**

v.

**The CIRCLE K CORPORATION, a Texas corporation; Farmers Produce Company, Inc., an Arizona corporation, d/b/a Farmers Quality Discount Liquor Stores; Bach T. Schlecht, d/b/a Economy Liquors; Bashas' Markets, Inc., an Arizona Corporation; Neb's Markets, an Arizona Corporation; Duppa Villa Liquors, Inc., an Arizona Corporation; Skagg's Drug Centers, Inc., a Utah Corporation; Smitty's Super-Value, Inc., an Iowa Corporation; Furr's Inc., a Texas Corporation; Safeway Stores, Inc., a Maryland Corporation; A. J. Bayless Markets, Inc., an Arizona Corporation; and Super X Drugs Corporation, a Michigan Corporation, Defendants-Appellees.**

No. 1 CA–CIV 4711.

Court of Appeals of Arizona,
Division 1,
Department A.

April 7, 1981.

Rehearing Denied May 27, 1981.

Review Denied June 16, 1981.

Thayer C. Lindauer, P. C. by Thayer C. Lindauer, Phoenix, for plaintiff-appellant.

Rawlins, Ellis, Burrus & Kiewit by H. J. Lewkowitz, David A. Clarke, George T. Anagnost, Phoenix, for defendant-appellee, Circle K Corp.

Jennings, Strouss & Salmon by David L. White, Phoenix, for defendant-appellee, Farmers Produce Co., Inc.

Burch & Cracchiolo, P. A. by Daniel Cracchiolo, Phoenix, for defendant-appellee, Bashas' Markets, Inc.

Beer, Kalyna, P. C. by Paul Beer, Phoenix, for defendant-appellee Neb's Markets.

Gallagher & Kennedy by Michael K. Kennedy, Phoenix, for defendant-appellee, Duppa Villa Liquors.

Lewis & Roca by Paul G. Ulrich, Andrew S. Gordon, Patricia K. Norris, Roger W. Kaufman, Phoenix, for defendant-appellee, Skaggs Drug Center, Inc. and Super X Drugs.

Roush, Mori & Welch by George Welch, Jr., Phoenix, for defendant-appellee, Smitty's Super-Value, Inc.

Streich, Lang, Weeks, Cardon & French by Ronald J. Cohen, James K. LeValley, Phoenix, for defendant-appellee, Furrs, Inc.

Snell & Wilmer by Charles K. Ayers, Phoenix, for defendant-appellee Safeway Stores, Inc.

Romley & Sherk by Roger T. Hargrove, Phoenix, for defendant-appellee, A. J. Bayless Markets, Inc.

## OPINION

WREN, Chief Judge.

The central issue in this appeal is the constitutionality of Arizona's Unfair Sales Act, A.R.S. §§ 44–1461—44–1466.

Appellant, Baseline Liquors, filed a complaint in Maricopa County Superior Court on June 1, 1978, alleging that the various named appellees, since July 1, 1977, had advertised, offered to sell and sold liquor, beer and wine to the retailer at a price less than cost, as defined in the Arizona Unfair Sales Act. The complaint also alleged that these activities had reduced competition for the sale of these items within Maricopa County; had unreasonably restrained trade; and had tended to create a monopoly. Compensatory and punitive damages were sought by appellant, as well as an injunction enjoining appellees from advertising, offering to sell or selling liquor, beer or wine in violation of the Act.

The Arizona Unfair Sales Act, A.R.S. §§ 44–1461—44-1466 was passed into law in 1939 (Laws 1939, Ch. 39). Its broad purpose was to prohibit the "predatory" practice of selling items at below cost (so-called "loss leaders") for the purpose of injuring competitors. Arizona was one of a large number of states to enact such a law beginning with South Carolina in 1902. However, the majority of states did not adopt similar legislation until after the passage of the Robinson-Patman Act (Act of June 19, 1936, Ch. 592, 49 Stat. at L. 1526, 15 U.S.C. §§ 13, 13a, 13b). For a thorough survey of unfair sales acts in the various states *see* Annot. *Validity, construction, and application of statutory provision prohibiting sale of commodities below cost,* 118 A.L.R. 506 *supplemented,* 128 A.L.R. 1126.

Several of the appellees filed motions to dismiss the complaint, asserting, *inter alia,* the unconstitutionality of the Unfair Sales Act. Following argument on the motions the trial court on December 6, 1978, dismissed the complaint on the ground that the Unfair Sales Act was unconstitutional. Since we have determined that this ruling

cannot be upheld on the present record, we reverse and remand for further proceedings.

■ At the outset we note that there is a strong presumption supporting the constitutionality of a legislative enactment and the party asserting its unconstitutionality bears the burden of overcoming that presumption. *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977); *State v. Krug*, 96 Ariz. 225, 393 P.2d 916 (1964); *Landgraff v. Wagner*, 26 Ariz.App. 49, 546 P.2d 26 (1976).

A.R.S. § 44–1462 sets forth the legislative purpose in passage of the Unfair Sales Act:

It is declared that the practice of selling certain items of merchandise below cost in order to attract patronage is generally a form of deceptive advertising and an unfair method of competition in commerce. Such practice causes commercial dislocations, misleads the consumer, works back against the farmer, directly burdens and obstructs commerce, and diverts business from dealers who maintain a fair price policy. Bankruptcies among merchants who fail because of the competition of those who use such methods result in unemployment, disruption of leases and nonpayment of taxes and loans, and contribute to an inevitable train of undesirable consequences, including economic depression, and it is hereby declared to be the policy of this state to protect the well-being of its citizens through the prevention, suppression and elimination of unfair methods of competition. The purpose of this act is to carry out such policy in the public interest.

With this stated intent in mind, we turn to the arguments raised by appellees in support of their contention that the act is unconstitutional.

■ Appellees first contend that A.R.S. § 44–1461(A)(1)(c)[1] is arbitrary because the 12 percent markup provision ignores various economies achieved by any particular retailer. Specifically, they point out that the 12 percent figure applies to all retailers regardless of size, location, type of business, business efficiencies or operational costs. Thus a retailer who operates in a more efficient manner with lower overhead costs is unable to pass these savings on to his customers if his actual cost of doing business is less than 12 percent. We disagree with this argument. The test for arbitrariness under the due process clauses of the federal and state constitutions is whether the legislative enactment is reasonably related to a legitimate state interest. *American Federation of Labor v. American Sash & Door Co.*, 67 Ariz. 20, 189 P.2d 912 (1948), *aff'd.* 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222, 6 A.L.R.2d 481 (1949).[2] Here appellees do not argue that the interest articulated in A.R.S. § 44–1462 is not a legitimate one. They further concede that the police power of the state extends to regulation and supervision of prices charged by private businesses in order to promote the general welfare. *State v. Walgreen Drug Co.*, 57 Ariz. 308, 113 P.2d 650 (1941). The question, then, is whether this enactment is reasonably related to that interest. We believe that it is, or rather, on the record before us, we are unable to say that

1. § 44–1461(A)(1)(c):

   A. In this article, unless the context otherwise requires:

   1. "Cost to the retailer" means the invoice cost of the merchandise to the retailer, or the replacement cost of the merchandise to the retailer, whichever is lower, less all trade discounts except customary discounts for cash, to which shall be added:

   \* \* \* \* \* \*

   (c) A markup to cover a proportionate part of the cost of doing business, which markup, in the absence of proof of a lesser cost, shall be twelve per cent of the cost to the retailer as defined in this section after adding thereto

freight charges and cartage but before adding thereto a markup.

2. U. S. Constitution, Amendment XIV, § 1, A.R.S. Constitution, Art. 2, § 4. Although *American Sash and Door* only referred specifically to the federal due process clause, we believe the test is the same under the state due process clause. *See Farmer v. Killingsworth*, 102 Ariz. 44, 424 P.2d 172 (1967), *Dimond v. Samaritan Health Service*, 27 Ariz.App. 682, 558 P.2d 710 (1976), *Cf. Valley National Bank of Phoenix v. Glover*, 62 Ariz. 538, 159 P.2d 292 (1945) (equal protection clauses of the federal and state constitutions have the same effect).

it is not. As mentioned earlier, this appeal comes to us on a grant of appellees' motions for dismissal. We find, however, that the record before us is completely devoid of any evidence, testimonial or otherwise, to support appellees' contention that the 12 percent figure is arbitrary. We are thus reduced to inspecting the provision on its face and are unable to say it is arbitrary simply because it establishes a fixed markup percentage. To the contrary, a fixed markup appears to us to be a reasonable means of achieving the stated goal of the act.[3]

Appellees rely on *Serrer v. Cigarette Service Co.*, 148 Ohio St. 519, 76 N.E.2d 91 (1947) and *Cohen v. Frey & Son, Inc.*, 197 Md. 586, 80 A.2d 267 (1951). We have examined these cases and find them to be inapposite. Although both decisions determined that a fixed markup provision similar to the one considered here was arbitrary, the finding was based on the inherent difference between two types of wholesale operations; "regular" and the so-called "cash and carry". The differences between these two types of operation were found to be so great that any statutory attempt to treat the two in a similar fashion was determined to be arbitrary. Here of course, no such distinction is argued as to different types of retailers. Furthermore, in both *Serrer* and *Cohen*, unlike here, the distinction between the wholesale types was able to be fully explored, since both were appeals following full evidentiary trials on the merits.

Furthermore, we have determined that the statute here is not arbitrary for the reason that it contains a provision allowing a retailer to sell at a lower cost than the fixed 12 percent markup. Since §§ 44–1461(A)(1)(c) states that the 12 percent shall be added "in the absence of proof of a lesser cost ...", it thus provides a party with the opportunity of showing that, because its (his) costs were less than 12 percent, it could sell at some figure less than the statutorily designated percentage.

Appellees, however, claim that the "absence of proof of a lesser cost" provision in reality provides no alternative to the 12 percent markup figure because it is impossible for a retailer to determine the cost of doing business attributable to each item he sells. We disagree. This issue has been considered in two cases of neighboring jurisdictions, *Trade Commission v. Skaggs Drug Centers, Inc.*, 21 Utah 2d 431, 446 P.2d 958 (1968) and *Flank Oil Company v. Tennessee Gas Transmission Company*, 141 Colo. 554, 349 P.2d 1005 (1960). In *Trade Commission*, the Utah Supreme Court stated:

> We agree with appellant's position that the lower court's conclusion that the 6% presumption provides no real alternative because it is "impractical" or "impossible" to prove actual cost under defendant's operating conditions, is neither supported by the evidence, nor is in accordance with the guidelines this court has established in determining the constitutionality of a statute. We are of the opinion the trial court erred in holding the Act requires the cost must be exact. All the statute requires is a cost figure arrived at by reasonable accounting periods. A statute is not to be declared invalid because of difficulty in applying its provisions. We think the Act is sufficiently clear to require compliance. The constitutionality of a statute is not to be decided on questions of inconvenience, or difficulty in application of a cost standard. 21 Utah 2d at 439–440, 446 P.2d at 963–964 (footnotes omitted).

In *Flank Oil*, the same analysis was made:

> Hence, in the absence of provisions to the contrary, we must presume that the legislature did not intend to prescribe that the cost must be absolutely exact, and that it must be based upon the precise method of accounting which any one merchant might adopt, but meant, by "cost", what business men generally

---

3. We likewise reject appellees' contention that the act violates equal protection; the equal protection and due process clauses are satisfied if all persons in a class are treated alike. *State ex rel. Babbitt v. Pickrell*, 113 Ariz. 12, 545 P.2d 936 (1976). Here, the statute manifestly treats all retailers alike.

mean, namely, the approximate cost arrived at by a reasonable rule. Hence, if a particular method adopted by a merchant cannot, under the facts disclosed, be said to be unreasonable, and does not disclose an intentional evasion of the law, the method so adopted should be accepted as correct. In other words, all that a man is required to do under the statute is to act in good faith. *Hygrade Provision Co. v. Sherman,* 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402. In that view of the case, the standard set by the legislature is virtually reduced to one of "reasonableness." And it is held that "reasonableness" as "a standard of an act, which can be determined objectively from circumstances, is a common, widely-used, and constitutionally valid standard in law." *People v. Curtiss,* 116 Cal.App.Supp. 771, 300 P. 801, 805, and cases cited. This, in our opinion, is a fair statement and meets with our approval.

There is no contention here that the cost must be absolutely exact. Good faith, however, is necessary. 141 Colo. at 566–657, 349 P.2d at 1012–1013, *citing Dikeou v. Food Distributors Association,* 107 Colo. 38, 108 P.2d 529 (1940).

We agree with the reasoning set forth in these cases and find that appellees have failed in their burden of proving that the "absence of proof of a lesser cost" provision provides no real alternative to the 12 percent markup provision. In so doing, we again note, that the fact that this case never went to trial precludes any attempt to rule on these issues, in that there is no record to which this court can refer. The same problem was alluded to in *Flank Oil.*

It is, of course, desirable that a full hearing be held in connection with constitutional objections. This view was expressed in the case of *People ex rel. Attorney General v. Barksdale,* 104 Colo. 1, 87 P.2d 755, 757 wherein the Court declared:

"* * * Especially in disposing of constitutional objections is it important to give a full hearing, first in regard to the proper allegations in pleadings, and then—as a rule—on the facts, which after all must usually determine whether a particular situation dealt with by the legislative branch does or does not justify a particular enactment, and whether or not in some respects, not appearing from the allegations themselves, the General Assembly has overstepped the constitutional bounds. 141 Colo. at 560–561, 349 P.2d at 1009.

In the absence of such a "full hearing", we reject the contention that the 12 percent markup is arbitrary and that the "absence of proof of a lesser cost" provision provides no alternative.

■ Appellees' next argument concerns the wording of A.R.S. § 44–1461(A)(3) which states:

3. "Cost to retailer" and "cost to the wholesaler" mean bona fide costs.

They assert that this definition is vague and imprecise and irreconcilably conflicts with the definition of "cost to the retailer" set forth in A.R.S. § 44–1461(A)(1). Again we disagree.

A.R.S. § 44–1461(A)(3) originally defined cost to the retailer and cost to the wholesaler as:

bona fide costs; *and purchases made by retailers and wholesalers at prices which cannot be justified by prevailing market conditions within this state shall not be used in determining cost to the retailer and cost to the wholesaler;* ... Laws 1939, Ch. 39, § 2 (emphasis added).

As appellees point out, the emphasized portion was held to be unconstitutionally vague in *State v. Walgreen Drug Co., supra.* It was therefore severed from the rest of the statute, leaving the present wording. We do not find the term "bona fide" to be vague, because it has a well settled meaning in law. Webster's Third New International Dictionary (unabridged, 1969) defines it as "made in good faith without fraud or deceit ... sincere ... genuine." Black's Law Dictionary, Fourth Edition (1951) defines it as "In or with good faith; honestly, openly, and sincerely; without deceit or fraud". We think it is clear, then, that use of the term bona fide cost in A.R.S.

§ 44–1461(A)(3) means "non fraudulent". For this reason, we reject appellees' argument regarding any conflict between §§ 44–1461(A)(1) and 44–1461(A)(3). In our opinion, the former section sets forth the technical definition of cost, whereas the latter requires that such claimed costs be non-fraudulent.

■ Since appellees' next two arguments are conceptually related, we consider them together. Referring to the provision of the act allowing for penal liability, they first posit that the act fails to require sufficient criminal intent to satisfy due process. As support they refer us to A.R.S. § 44–1464, which makes it illegal for any retailers to advertise, offer to sell or sell any merchandise at less than cost "with the intent or effect of inducing the purchase of other merchandise, or of unfairly diverting trade from a competitor or otherwise injuring a competitor . . ." This argument continues that since the statute reads in the disjunctive ("either intent *or* effect . . .") it impermissibly renders it unnecessary to prove intent to violate it. Again we find this argument to be without merit. The exact issue was considered in *State v. Walgreen Drug Co., supra,* wherein it was stated:

> We consider then the objection that the chapter imposes both civil and penal liability upon one who violates its provisions without any criminal intent . . . we think that while it is not explicitly stated therein that the particular thing done must be done with a criminal intent, the only reasonable implication from the entire language of the chapter is that such intent is an essential ingredient of a violation thereof. A similar construction has been given to statutes which fail, as does ours, explicitly to require the criminal intent. 57 Ariz. at 317, 113 P.2d at 654–655.

Appellees, however, point out that the legislature re-enacted the act after *Walgreen* and retained the disjunctive language; that therefore this court is not bound by its holding. We disagree. *Walgreen* found that the language of the chapter made it clear that intent is an essential ingredient in proving a violation of the act. In our opinion, the mere fact that the legislature re-enacted the act with the language unchanged does not render *Walgreen* inapplicable. We therefore follow its holding.

■ Appellees next challenge concerns the wording of A.R.S. § 44–1466 which states: [4]

> A. Any retailer who, in contravention of the policy of this article, advertises, offers to sell or sells at retail any item of merchandise at less than cost to the retailer as defined in this article or any wholesaler who, in contravention of the policy of this article advertises, offers to sell or sells at wholesale any item of merchandise at less than cost to the wholesaler as defined in this article, is guilty of a petty offense.
>
> B. Proof of any advertising, offer to sell or sale by any retailer or wholesaler in contravention of the policy of this article is prima facie evidence of a violation of this article.

Appellees assert that paragraph (B) creates a prima facie presumption of intent to injure, thus unconstitutionally placing the burden of proving lack of intent upon the defendant. We disagree. There is no alteration of the burden of proof in a prosecution under the statute. Such burden of proof remains, as it must, on the state. *State v. Garcia,* 116 Ariz. 546, 570 P.2d 488 (1977). What the statute does permit, however, is the use by the state of an evidentiary presumption of a violation upon proof that a retailer has advertised, offered to sell or sold in contravention of the policy of the article. As such, the presumption is not unlike those allowed in other areas of criminal law such as the presumption of intoxication from proof of the presence of 0.15 percent or more by weight of alcohol in a person's blood, *State v. Childress,* 78 Ariz. 1, 274 P.2d 333, 46 A.L.R.2d 1169 (1954), the

---

4. After filing of the motions for dismissal but before judgment, A.R.S. § 44–1466 was amended, the penalty for violation being reduced from a misdemeanor to a petty offense. Since this change is irrelevant as to the issue raised regarding the statute, we refer to the amended version.

presumption of sanity in criminal prosecutions, *State v. Sanchez*, 117 Ariz. 369, 573 P.2d 60 (1977) or the presumption that driving in excess of the posted speed limit is unreasonable and unlawful. *State v. Rich*, 115 Ariz. 119, 563 P.2d 918 (App.1977).

■ Appellees' final argument is that the act constitutes a price fixing statute in violation of the Sherman Act[5] and is not within the state action exemption of the Sherman Act, citing *Rice v. Alcoholic Beverage Control Appeals Board*, 21 Cal.3d 431, 146 Cal.Rptr. 585, 579 P.2d 476 (1978). We disagree. The *Rice* opinion dealt with a fair trade law in California. It found that the law violated the Sherman Act and was not protected by the state action exemption to the law. That is not the situation here, since this statute is not a fair trade act, but one which prohibits below-cost sales for the purpose of injuring competition. That there is a difference is manifested by the fact that until 1976, Arizona had *both* a fair trade act *and* an act prohibiting below-cost sales. The former was repealed, Laws 1976, Ch. 81, § 13. It is also manifested by the fact that *Rice*, after holding that the California fair trade statute violated the Sherman Act, affirmed the validity of California's "loss leader" prohibition statute, the analogue of Arizona's Unfair Sales Act:

> Finally, we find persuasive the argument that there are other means to achieve the fundamental goals of the price maintenance laws without running afoul of the Sherman Act. Thus, our laws prohibit the sale of any product as a "loss leader (Bus. & Prof. Code, § 17044) . . ." 21 Cal.3d at 458, 146 Cal.Rptr. at 603, 579 P.2d at 494.

We thus hold that the Sherman Act is inapplicable to the Unfair Sales Act because the Unfair Sales Act is not a price-fixing statute.[6] As was stated in *Drink, Inc. v. Babcock*, 77 N.M. 277, 421 P.2d 798 (1966):

> [T]he legislature has the power to act on the subject of below-cost sales and their effect on free competition, and may adopt legislation relating to the establish-

ing of prices on alcoholic beverages with the view and purpose of regulating and controlling the liquor business in the interest of the public welfare. 77 N.M. at 284, 421 P.2d at 803.

The judgment of the trial court dismissing appellant's complaint is reversed and remanded.

CONTRERAS, P. J., and DONOFRIO, J., concur.

5. 15 U.S.C. § 1 *et seq.*

6. *Cf. State v. Arizona Licensed Beverage Association, Inc.*, 627 P.2d 666, (Supreme Court, 1981) (agreements authorized by fair trade act are accepted from antitrust prohibitions of state antitrust act.)