The STATE of Utah, By and Through the DIVISION OF CONSUMER PROTEC- TION, Dixie L. Minson, Director, Plain- tiff, Appellant, and Cross–Appellee,

v.

RIO VISTA OIL, LTD., a corporation of the State of Utah, Defendant, Appellee, and Cross–Appellant.

No. 860620.

Supreme Court of Utah.

Feb. 8, 1990.

R. Paul Van Dam, Stephen G. Schwendiman, Ruth Lybbert Renlund, Salt Lake City, for plaintiff, appellant and cross appellee.

L.R. Gardiner, Jr., Thomas R. Vuksinick, Salt Lake City, for defendant, appellee and cross appellant.

ZIMMERMAN, Justice:

The State of Utah, through the Division of Consumer Protection, appeals a district court decision holding that the Motor Fuel Marketing Act ("the Act") is unconstitutional. *See* Utah Code Ann. §§ 13–16–1 to –9 (1986 & Supp.1989) (amended 1987).[1] The court ruled that several provisions of the Act relating to its ban on below-cost sales violated the due process clauses of both the Utah and the United States Constitutions. Utah Const. art. I, § 7; U.S. Const. amend. XIV, § 1. Rio Vista Oil, Ltd. ("Rio Vista"), cross-appeals the court's denial of its request for an award of attorney fees. We hold that the Act is not unconstitutional and reverse and remand the matter for further proceedings. This disposition makes it unnecessary for us to address Rio Vista's cross-appeal.

Some background is necessary.[2] The Act was passed in March of 1981 with the declared purpose of counteracting a tendency toward monopolization in the motor fuel marketplace and its attendant destruc-

---

1. The Motor Fuel Marketing Act was extensively amended in 1987. As a result, each provision pertinent to this action and discussed in this opinion has been substantially changed. *See* Motor Fuel Marketing Act Amendments, 1987 Utah Laws 1103, ch. 189.

2. See Annotation, *Validity, Construction, and Application of State Statutory Provision Prohibiting Sales of Commodities Below Cost—Modern Cases,* 41 A.L.R.4th 612 (1985 & Supp.1989), for an overview of recent challenges to statutes prohibiting below-cost sales. Such statutes have been enacted by a majority of states. *Id.* at 617.

tive effects on competition and injury to the consuming public. *See* Utah Code Ann. § 13–16–1 (1986) (repealed 1987).[3] To that end, the Act prohibits, inter alia, marketers of motor fuel in Utah from engaging in below-cost sales and discriminatory pricing, two practices the legislature considered to be conducive to monopolization. Section 13–16–4 provides:

> It is unlawful for any person engaged in commerce within this state to sell or offer to sell motor fuel below cost or to sell or offer to sell it at a price lower than the seller charges other persons at the same time and on the same level of distribution.

Utah Code Ann. § 13–16–4 (1986) (amended 1987).[4] Limited defenses are available to persons charged with such violations. Section 13–16–6 provides what can be termed a "meeting-competition" defense:

> (2) It is not a violation of § 13–16–4 [the ban on below-cost sales or discriminatory pricing] ... if a difference exists ... between sales prices at the same marketing level if the difference exists because of a good faith effort to meet an equally low price of a competitor or is exempt under § 13–5–12.
>
> (3) It is not a violation of § 13–16–4 ... if a difference exists ... between sales prices at the same marketing level if the difference exists because of a promotional effort to initially enter a new market area if the subsidization ceases no more than 14 days after initial market area entry.

Utah Code Ann. § 13–16–6(2), (3) (1986) (amended 1987).[5] The State or any person injured by a violation of the Act may institute civil actions for injunctive relief and damages. *See* Utah Code Ann. § 13–16–7

**3.** Former section 13–16–1, entitled "Findings of Legislature," states:

> The Legislature makes the following findings with respect to the marketing of motor fuels in Utah:
>
> (1) Unfair competition in the marketing of motor fuels occurs whenever costs associated with the marketing of motor fuels are recovered from other operations....
>
> (2) Independent oil marketers (i.e., dealers, distributers, jobbers, and wholesalers) are unable to survive predatory subsidized pricing at the marketing level....
>
> (3) Subsidized pricing is inherently predatory and is reducing competition in the petroleum industry, and, if it continues unabated, will threaten the consuming public.

Utah Code Ann. § 13–16–1 (1986) (repealed 1987).

**4.** Section 13–16–2 provides in part:

> (1) "Cost" means, as applied to production, the cost of raw materials, labor and overhead expense incurred in the production of motor fuel and, as applied to distribution, the invoice or replacement cost of the motor fuel to the distributor, whichever is less, plus the cost of doing business by the distributor.

Utah Code Ann. § 13–16–2(1) (1986) (amended 1987). Section 13–16–2(2) provides: "'Cost of doing business' means all costs incurred in the conduct of business, including, but not limited to, rent, interest on borrowed capital, licenses, taxes, insurance, maintenance of equipment, credit losses, losses due to breakage or damage, depreciation, labor, salaries, and transportation costs." Utah Code Ann. § 13–16–2(2) (1986) (amended 1987).

**5.** Section 13–5–12, referred to in section 13–16–6(2), provides certain exemptions from the prohibition on below-cost sales and discriminatory pricing found in the Act. Section 13–5–12 is part of the 1937 Unfair Practices Act, and prohibits a variety of unfair trade practices, including below-cost sales. *See* §§ 13–5–1 to –18 (1986 & Supp.1989). Section 13–5–12 provides in part:

> The provisions of this act shall not apply to any sale made:
>
> (a) in closing out in good faith the owner's stock or any part thereof for the purpose of discontinuing his trade in any such stock or commodity ...;
>
> (b) when the goods are damaged or deteriorated in quality, and prior notice is given to the public thereof;
>
> (c) by an officer acting under the orders of any court;
>
> (d) in an endeavor made in good faith to meet the legal prices of a competitor as herein defined selling the same article, product or commodity in the same locality or trade area;
>
> (e) by manufacturers, producers, brokers or wholesale distributors meeting in good faith prices established by interstate competition regardless of cost; provided, such prices are available to all persons buying on like terms and conditions in the same locality and vicinity.

Utah Code Ann. § 13–5–12 (1986).

(1986) (amended 1987).[6]

In late June of 1986, the State filed a civil action against Rio Vista, seeking injunctive relief and damages for alleged violations of the Act. Specifically, the State charged that Rio Vista, a gasoline retailer in Utah, violated section 13–16–4 by offering to sell motor fuel below cost in Moab, Utah, in March of 1986, and in American Fork, Utah, in June of 1986. The State sought a temporary restraining order to prevent further below-cost sales by Rio Vista. The third district court issued such an order and scheduled a hearing on the State's motion for a preliminary injunction. Rio Vista opposed the preliminary injunction on two grounds: (i) that the Act's ban on below-cost sales violated the due process clauses of the federal and state constitutions, U.S. Const. amend. XIV; Utah Const. art. I, § 7; and (ii) that Rio Vista's below-cost sales were eligible for the meeting-competition defense provided in section 13–16–6.

After the hearing, the court issued a memorandum decision denying the preliminary injunction. Without explaining its conclusion at any length, the court found that the Act denied Rio Vista due process. The court specifically declined to address the narrower question of whether Rio Vista's sales were permitted by section 13–16–6. The court requested that counsel for Rio Vista prepare findings and conclusions.

Rather lengthy findings and conclusions were submitted and subsequently signed.

In the findings and conclusions, the court held that the Act violated the due process clauses of both the Utah and the United States Constitutions. Although the extensive findings and conclusions are somewhat opaque, the underlying logic seems to flow as follows: First, section 13–16–4 of the Act prohibits all below-cost sales without regard to the intent of the seller or to whether there is any resulting injury to competition. Second, the meeting-competition defense of section 13–16–6 is not available to one charged with below-cost sales. Finally, the definition of "cost" in section 13–16–2, which is used to determine whether a sale is below cost, is so vague that it is impossible for a seller to reasonably determine whether the law is being violated. Based on these premises, the court concluded that the statute prohibits innocent below-cost sales having no deleterious effect on competition. Such a sweeping ban is not reasonably related to any legitimate legislative purpose and, therefore, runs afoul of the due process clauses of the state and federal constitutions.

As a result of these findings and conclusions, the State's suit was dismissed with prejudice. Rio Vista, as the prevailing party, then sought an award of attorney fees under section 13–16–7(3) of the Act.[7] The request was denied. The State appealed from the judgment dismissing its action, and Rio Vista cross-appealed from the denial of attorney fees.

---

6. Subsections 13–16–7(1) and (2) provide:
 (1) If it appears to the division of consumer protection of the department of business regulation that a person has, or is about to, engage in acts or practices violative of § 13–16–4 or 13–16–5, the division may request the attorney general or a county attorney to commence a civil action to enjoin such acts or practices, and upon a proper showing, a temporary restraining order, preliminary injunction, or permanent injunction shall issue without the necessity of a bond. Any person found guilty of violating § 13–16–4 or 13–16–5, in an action under this subsection, is liable to the state for a civil penalty not to exceed $5,000 for each violation.
 (2) A person injured as a result of an act or practice which violates § 13–16–4 or 13–16–5 may bring a civil action for appropriate relief, including an action for a declaratory judgment, injunctive relief, and for actual and exemplary damages. Any actual damages found to have resulted from violation of § 13–16–4 or 13–16–5 shall be trebled by the court in making its award. Any action under this subsection shall be brought within two years after the alleged violation occurred.
 Utah Code Ann. § 13–16–7(1), (2) (1986) (amended 1987).

7. Section 13–16–7(3) of the Code provides: "The court, in making an award under Subsection[ ] (1) or (2) of this section, may award court costs and a reasonable attorney fee to the prevailing party." Utah Code Ann. § 13–16–7(3) (1986) (amended 1987). See *supra* note 6 for text of subsections 13–16–7(1) and (2).

■ Before addressing the State's attack on the district court's ruling, we must deal with several preliminary matters. First, there is an apparent inconsistency between the reasoning of the findings and conclusions and the district court's memorandum decision. The findings and conclusions state, in substance, that the meeting-competition defense is not available to a below-cost seller like Rio Vista; indeed, such a conclusion is one of the premises upon which the court bases its ultimate conclusion of unconstitutionality. Yet in the cursory memorandum decision, the judge stated that he was not reaching this issue. The explanation for this inconsistency may be that the judge changed his mind. It may also be that counsel for Rio Vista, in drafting the findings and conclusions, thought that the issue of the meeting-competition defense should be addressed to strengthen the ultimate conclusion that the statute violated the constitution by prohibiting all below-cost sales. Whatever reason for this inconsistency, the findings and conclusions were signed by the judge and are not attacked here as not representing his views. We must assume that he found them satisfactory in all particulars. *See Automatic Control Prods. Corp. v. Tel-Tech, Inc.,* 780 P.2d 1258, 1260 (Utah 1989); *id.* at 1263 (Zimmerman, J., concurring).

■ Second, we note the applicable standard of review. The State does not challenge any of the district court's factual findings on appeal. Instead, it claims that the court erred in interpreting the Act and concluding that it is unconstitutional. Because the judge purported to make some twenty-four findings of fact, it might be supposed that the State accedes to those findings. However, in reality almost all of these "findings of fact" are actually conclusions of law. On appeal, we do not accord conclusions of law added deference simply because they are denominated findings of fact. We disregard labels and look to the substance. *Zions First Nat'l Bank, N.A. v. National Am. Title Ins. Co.,* 749 P.2d 651, 656 (Utah 1988); *see Demetro-*

*poulos v. Vreeken,* 754 P.2d 960, 963 n. 8 (Utah Ct.App.1988). Here, all relevant rulings are matters of statutory interpretation. We accord a lower court's statutory interpretations no particular deference but assess them for correctness, as we do any other conclusion of law. *See, e.g., State v. Mitchell,* 779 P.2d 1116, 1123 (Utah 1989); *Utah State Coalition of Senior Citizens v. Utah Power & Light Co.,* 776 P.2d 632, 634 (Utah 1989); *City of West Jordan v. Utah State Retirement Bd.,* 767 P.2d 530, 532 (Utah 1988); *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987).

It should also be noted that when, as here, we are faced with a claim that a statute is unconstitutional, we adhere to the rule that "legislative enactments are endowed with a strong presumption of validity and will not be declared unconstitutional unless there is no basis upon which they can be construed as conforming to constitutional requirements." *In re Criminal Investigation, 7th Dist. Ct.,* 754 P.2d 633, 640 (Utah 1988) (citing *Greaves v. State,* 528 P.2d 805, 806–07 (Utah 1974)); *see also Provo City Corp. v. Willden,* 768 P.2d 455, 458 (Utah 1989); *Trade Comm'n v. Skaggs Drug Centers, Inc.,* 21 Utah 2d 431, 437–38, 446 P.2d 958, 962 (1968).

With these standards in mind, we consider the State's challenge to the trial court's holding that the Act is unconstitutional.

■ The State first claims that the district court erred in construing the Act not to provide a meeting-competition defense to a below-cost seller situated as is Rio Vista. We agree with the State. Section 13–16–6(2) provides:

It is not a violation of § 13–16–4 [the ban on below-cost sales or discriminatory pricing] ... if a difference exists ... between sales prices at the same marketing level if the difference exists because of a good faith effort to meet an equally low price of a competitor or is exempt under § 13–5–12.

Utah Code Ann. § 13–16–6(2) (1986) (amended 1987). By its plain terms, section

13–16–6(2) gives a meeting-competition defense to a motor fuel marketer selling at several retail outlets if the prices of one outlet are lower than the prices of another and it is contended that that lower price is below cost. This scenario reaches the facts of this case. Rio Vista was charged with making below-cost retail sales of gasoline. These sales were made when Rio Vista charged different prices for gasoline at different outlets in the state. Therefore, Rio Vista has a meeting-competition defense if all of these sales were made in "a good faith effort to meet an equally low price of a competitor." The district court erred in holding otherwise.[8]

██ We note that section 13–16–6(3) may also provide a defense to Rio Vista. That provision states:

It is not a violation of § 13–16–4 ... if a difference exists ... between sales prices at the same marketing level if the difference exists because of a promotional effort to initially enter a new market area if the subsidization ceases no more than 14 days after initial market area entry.

Utah Code Ann. § 13–16–6(3) (1986) (amended 1987). Therefore, Rio Vista might also defend against this action by demonstrating that its below-cost retail sales were part of a "promotional effort to initially enter a new market area" that was of a duration shorter than fourteen days.

██ The State next attacks the district court's conclusion that sections 13–16–2 and –8 of the Act are impermissibly vague in defining what constitutes a seller's costs for purposes of determining whether a sale is below cost. The State claims that it is not necessary for the Act to precisely define costs. All that is required to pass constitutional muster is that costs be computed through reasonable accounting methods. The State bases its argument on our

decision in *Trade Commission v. Skaggs Drug Centers, Inc.*, 21 Utah 2d 431, 446 P.2d 958 (1968).

The State correctly states that the resolution of this issue is controlled by the *Skaggs* decision. In *Skaggs*, this Court was presented with the question of whether the Utah Unfair Practices Act was unconstitutionally vague because it failed to specifically define how a seller's costs were to be determined, while prohibiting certain below-cost sales made with the intent to injure competition. In upholding the statute, we stated:

We are of the opinion the trial court erred in holding the Act requires the cost must be exact. All the statute requires is a cost figure arrived at by reasonable accounting methods. A statute is not to be declared invalid because of difficulty in applying its provisions. We think the Act is sufficiently clear to require compliance. The constitutionality of a statute is not to be decided on questions of inconvenience, or difficulty in application of a cost standard.

*Id.* 21 Utah 2d at 440, 446 P.2d at 964 (footnotes omitted).

This principle is equally applicable to the present action. Section 13–16–2 provides in part:

(1) "Cost" means, as applied to production, the cost of raw materials, labor, and overhead expense incurred in the production of motor fuel and, as applied to distribution, the invoice or replacement cost of the motor fuel to the distributor, whichever is less, *plus the cost of doing business* by the distributor.

(2) "Cost of doing business" means *all costs incurred in the conduct of business, including, but not limited to*, rent, interest on borrowed capital, licenses, taxes, insurance, maintenance of equipment, credit losses, losses due to break-

---

8. Although not addressed by the parties or the court below, section 13–5–12, referred to in section 13–16–6(2), may also provide Rio Vista with a defense to this action. Section 13–5–12(d) permits below-cost sales "made in good faith to meet the legal prices of a competitor ... selling the same article, product or commodity in the same locality or trade area." Utah Code Ann. § 13–5–12(d) (1986). See *supra* note 5 for the full text of section 13–5–12.

age or damage, depreciation, labor, salaries, and transportation costs.

Utah Code Ann. § 13–16–2(1), (2) (1986) (amended 1987) (emphasis added). In addition, section 13–16–8 provides in part, "In the absence of any evidence on the cost of doing business, a margin of 6% of the posted retail price of the motor fuel is prima facie evidence of such cost." Utah Code Ann. § 13–16–8 (1986) (amended 1987).

These definitions of "cost" and "cost of doing business" are sufficiently clear so that anyone using reasonable accounting methods could comply with the Act. *See also Baseline Liquors v. Circle K Corp.*, 129 Ariz. 215, 219–20, 630 P.2d 38, 42–43 (Ct.App.), *cert. denied sub nom. Skaggs Drug Centers, Inc. v. Baseline Liquors*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 387 (1981); *Flank Oil Co. v. Tennessee Gas Transmission Co.*, 141 Colo. 554, 564–68, 349 P.2d 1005, 1011–13 (1960). The district court erred in holding that the Act was impermissibly vague in defining a seller's costs.

■ Finally, the State attacks the district court's conclusion that the Act prohibits all below-cost sales. We have already determined that section 13–16–4 permits a motor fuel marketer to make certain good faith below-cost sales to meet competition or enter a new market area. And we have also decided that a person using reasonable accounting methods can calculate whether his or her sales are below cost. It follows that the district court erred in interpreting the Act to prohibit all below-cost sales and holding it unconstitutional on that ground.

■ Even though the Act allows below-cost sales in certain situations and is not impermissibly vague in its definition of a seller's costs, the question remains whether the Act is subject to due process challenge on grounds that it does not appear to require a showing that prohibited below-cost sales be made with an intent to injure competition. We have never addressed the question of whether below-cost sales can be prohibited in the absence of

such intent. Some jurisdictions have held that complete bans on below-cost sales are unconstitutional unless predatory intent is also required. *See, e.g., Baseline Liquors*, 129 Ariz. at 222, 630 P.2d at 44; 1A Callman, *Unfair Competition Trademarks and Monopolies* § 7.08 (4th ed. 1984 & Supp.1989). However, we have found no decisions addressing whether a statute can prohibit below-cost sales of a specific commodity in the absence of predatory intent when the statute also includes a meeting-competition defense. We conclude that there is no need for us to reach this complicated question of the limits of legislative power today.

A fundamental principle of judicial review is that, when possible, we refrain from deciding constitutional questions. *See, e.g., State v. Anderson*, 701 P.2d 1099, 1103 (Utah 1985); *Hoyle v. Monson*, 606 P.2d 240, 242 (Utah 1980). This is especially true when there is no factual record before us. Here, the district court proceeded to decide constitutional questions on the basis of several assumptions about the proper interpretation of the Act, assumptions that we have now disavowed. It is impossible to tell how the record would have developed if the parties had actually addressed the below-cost and meeting-competition issues and whether it would have been necessary to consider the final constitutional question we pose in the preceding paragraph. If Rio Vista could have shown that it was not selling below cost or that it was entitled to the meeting-competition defense, as it was apparently ready to do, there would be no need to address the issue. Under these circumstances, and considering that the Act has been completely rewritten in the interim, we decline to address what appears to be an abstract constitutional law question.

■ As an aside, we note that in this case, both Rio Vista and the district court appear to have misperceived the burden upon one attacking a legislative enactment in the economic area as unconstitutional. It is axiomatic that statutes are presumed to be constitutional and that the party challenging a statute's constitutionality bears the burden of proving that it is invalid. *Blue Cross & Blue Shield v. State*, 779

P.2d 634, 637 (Utah 1989); *Baker v. Matheson*, 607 P.2d 233, 237 n. 2 (1979); *Lehi City v. Meiling*, 87 Utah 237, 246–47, 48 P.2d 530, 535 (1935). This burden is especially heavy when attacking an economic measure. *See Blue Cross*, 779 P.2d at 637. The burden is on the State to justify such measures only if they impinge on some fundamental right. *See Condemarin v. University Hosp.*, 775 P.2d 348, 368 (Utah 1989) (Zimmerman, J., concurring) (due process analysis); *City of West Jordan v. Utah State Retirement Bd.*, 767 P.2d 530, 537 (Utah 1988) (uniform operation of the laws analysis); *Mountain Fuel Supply Corp. v. Salt Lake City Corp.*, 752 P.2d 884, 888 (Utah 1988) (uniform operation of the laws analysis).

 Here, Rio Vista and the district court seem to have proceeded on the assumption that the burden was on the State to justify this legislation. It appears that they assumed that because there is nothing inherently evil about below-cost pricing, the burden was on the State to justify its prohibition. That is an inaccurate presumption. If it becomes necessary for the district court to address this constitutional question again, it should make it clear that the burden is on Rio Vista to demonstrate that the Act is not reasonably related to the achievement of any conceivable legislative objective. *See Blue Cross*, 779 P.2d at 637; *Baker*, 607 P.2d at 244. Such a showing might require detailed information about the market in question, the pricing policies of the competitors, etc. *See Blue Cross*, 779 P.2d at 637–41; *Mountain Fuel*, 752 P.2d at 890–91.

The district court's judgment is vacated, and the case is remanded for further proceedings on the question of whether Rio Vista was, in fact, engaged in below-cost sales and whether it qualifies for the statutory defenses.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.